Chittenden, J.
At the election held on November 7, .1916, the Democratic candidates for county commissioners, Frank T. Andrews, Joseph Menning and James T. Kelly, were declared duly elected by The Board of Deputy State Supervisors and Inspectors of Elections. Thereupon the Republican candidates, Fred H. Kohler, Alva R. Dittrick and John A. MacDonald, appealed from the decision of The Board of Deputy State Supervisors and Inspectors of Elections to the court of common *364 pleas, as provided by statute, and served the necessary notices of contest. This resulted in nine elec-, tion contests in the court of common pleas, and these contest cases were consolidated and all proceeded under cause No. 153105, entitled Alva R. Dittrick v. James T. Kelly. Testimony was taken ^before justices of the peace, and the cause came on for trial in the court of common pleas, resulting in a finding.in favor of the contestees and a dismissal of the appeal at the costs of the contestants. To .this judgment error is prosecuted in this court.
The evidence shows that Cuyahoga county had 576 or 578 voting precincts; that at the election in question 133,483 ballots were cast. The Deputy State Supervisors and Inspectors of Elections, upon the official count of the ballots, found that 71,533 ballots had been cast in favor of Woodrow Wilson, Democratic candidate for president, and 51,287 ballots in favor of Charles E. Hughes, Republican candidate for president. The remainder of the ballots were cast in favor of minor candidates for the office of president. The declared result of the election for the office of county commissioners was as follows:
For the Republican candidates:
Fred Kohler, 56,574 votes
Alva R. Dittrick, 56,609 votes
John A. MacDonald. 55,414 votes
For the Democratic candidates:
Frank T. Andrews, 63,471 votes
Joseph Menning, 61,314 votes
James T. Kelly, 59,131 votes
*365 It is not claimed by the contestants that there was any fraud in the conduct of the election' or in the counting of the ballots. • It is their earnest contention, however, that there were mistakes and errors made in the counting of the ballots, and that if all the ballots had been correctly counted the result would have shown the election of the Republican candidates for county commissioners instead of the Democratic candidates.
The contestants called 75 witnesses who testified as to errors said to have been committed in 75 different precincts, and the total number of ballots about which they testified as having been erroneously counted was approximately 1,200. These precincts are said to be precincts distributed generally throughout the city, and one or two from each end of the county outside of the city, and it is said that the testimony indicates that errors in the method of counting were being made generally throughout the county, and that if the same ratio of errors was maintained throughout the. county the announced result of the election would of necessity be changed. The mistakes claimed ranged themselves into several classes. The evidence does not show that the same class of mistakes was uniform in all precincts. In some precincts the testimony shows that a given class of claimed errors was made in the counting; that in other precincts another class of errors prevailed; and that in some precincts pdrhaps errors of each class were testified to.
At the conclusion of the evidence counsel for the contestants moved the court to make an order requiring that all the ballots cast in the county be opened. After argument the court declined to *366 make such an order and dismissed the appeal as above stated. The motion of the contestants was based upon the provisions of Section 5090-1, General Code (106 Ohio Laws, 209). This section of the General Code makes provision for the preservation of all ballots for a period of 30 days after the election and for their destruction at the expiration of that time unless there shall be a contest of the election pending at the expiration of the 30-day period. The section reads in part as follows:
“Provided that if any contest of election shall be pending, at the expiration of said time the said ballots shall not be destroyed until such contest is finally determined. In all cases of contested elections, the parties contesting the same shall have the right, after a prima facie case of fraud, mistake or error is shown, to have said ballots opened and to have all errors made in counting corrected by the court or body trying such contest; but such ballots shall be opened only in open court or in open session of such body and in the presence of the officers having- the custody thereof.”
The real question to be determined in this proceeding is whether the court erred in finding, from the evidence submitted to it, that the contestants had failed to make a prima facie case of mistake or error which would warrant an order to have all the ballots cast in the county opened and recounted.
It may be well to examine the original Section 5090-1 (103 Ohio Laws, 265), which was amended by the act aboA^e cited. The original act provided that “In all cases of contested elections, the party contesting the same shall have the right to have, said ballots opened and to have all errors in count *367 ing corrected by the court,” etc. It is claimed that the original section gave the right to contestants to have all the ballots opened and counted in case of contest.
The correct construction of the act was presented in an election contest case in Jefferson county. That case found its way to the supreme court of the state, and is found reported as In re Contest of Election of Fremont Tarr: Tarr v. Priest, 93 Ohio St., 199. The court of common pleas had ordered that only the ballots in the two precincts to which evidence of error had been directed should be opened, and refused to order the ballots in the remaining precincts to be opened, for the reason that no evidence had been introduced tending to show mistakes or errors as to those precincts. The court of appeals reversed this judgment of the court of common pleas and remanded the case to the court of common pleas with an order to recount all of the ballots in each precinct of the county. While the case was pending in the supreme court the amendment found in 106 Ohio Laws, above cited, was passed. Thereafter the supreme court in deciding the case of Priest v. Tarr, reversed the court of appeals and affirmed the judgment of the court of common pleas. Lithe course of the opinion the following language was used, at page 202:
“We do not think it was the intention of the legislature, in the enactment of the provision of Section 5090-1 which we have quoted, that the ballots should be used as original evidence for the purpose of discovering errors. Assuming that the grounds of contest set out in the notice of appeal *368 were stated with sufficient definiteness, if, upon the trial before the court, there had been evidence tending to show that errors had been committed in any precinct the .court was with authority to order a recount of the ballots in that precinct and have such errors as might be found corrected. In the absence of such evidence the court was without authority to act. We conclude, therefore, that the court of common pleas was correct in its refusal to order the ballots in the precincts other than Warren and Toronto No. 1 opened and recounted.”
It will be observed that the supreme court said that if upon the trial there had been evidence tending to show that errors had been committed in any other precinct, that would furnish authority to the court to order a recount of the ballots in that precinct, but that in the absence of such evidence the court would be without authority to order a recount.
The question then is: Does this record disclose evidence tending to show that errors were committed in any other precincts than the 75 precincts concerning which witnesses testified? It is to be remembered that the court of appeals is not sitting as a trial court but only as a reviewing court, and that before a judgment of the trial court will be reversed the plaintiff in error must show manifest error in the proceedings prejudicial to his rights. The duty rested upon the trial court to pass upon the credibility of the witnesses and weigh the evidence under the well-known and well-settled rules of law. That court stated that much of the evidence adduced was, in its judgment, entitled to little if any credit.
*369 During the course of argument 'before this court considerable criticism was passed upon the method employed in ascertaining what the witnesses for the contestants would testify to, and it was intimated that their testimony was in accordance with suggestions made at these interviews. We are not much impressed with the force of that argument:' It is the duty of counsel in any lawsuit to ascertain what the witnesses know and will testify to upon the witness stand, and in the matter of an election contest where a large number of witnesses are to be examined it may be that the most practical method of ascertaining what their testimony will be is to exhibit sample ballots and either have the witnesses indicate upon those ballots what the marking was upon the original ballot, or inquire, as was done in this case, whether certain marks shown upon the sample ballots were seen at the time of the counting, and, if so, how they were counted. It is true that this method might easily be subject to abuse. However, it is apparent that these witnesses very generalfy were called upon to. give their recollection some time after the ballots were counted, and it does not appear that they had kept any written record of what was observed by them, and it is self-evident that their recollection would not be very accurate. Other facts appear which bore upon the weight to be given the testimony of the several witnesses and which the trial court might very properly take into consideration in determining the weight to which it was entitled in passing upon the issues presented. .
It does appear from the evidence that these mistakes, whatever they were, were a result of the *370 judgment of the election officials in the voting booths as to how ballots marked in a given way should be counted; and, while the inquiry was not pursued, it does appear that mistakes of the kind claimed appeared upon the Republican ticket as well as upon the Democratic ticket. There is an entire lack of evidence, however, as to the extent of those mistakes. A fair inference, perhaps, would be that such mistakes were in about the same proportion upon both tickets. Plaintiff in error, however, earnestly contends that mistakes of a like character upon the Republican tickets are not material in a contest of this character. That it is only necessary for the contestants to show mistakes upon the Democratic ballots that would indicate a change’ in the result, and that it was not incumbent upon them to show, nor, indeed, was it proper to be determined by the court, whether similar mistakes were made upon the Republican ballots which might neutralize the result claimed by them, — at least to a» very large extent. In the absence of evidence, and no fraud being claimed, the court is justified in assuming that like errors in the same proportion existed in the other tickets.
The number of precincts involved in the inquiry was approximately one-eighth of the total number of precincts, and the court is required by the claims of plaintiff in error to assume that the errors shown in one precinct likewise appear in seven precincts about which no evidence at all is presented, or, in other words, that if errors appeared in 75 precincts, it is a prima facie showing' that similar errors occurred in the 500 or more precincts concerning which no evidence was intro *371 duced. But if the assumption of the plaintiff in error be correct, that errors of the kind testified to appear in the remaining 500 precincts, in the absence of testimony to the contrary, and in the absence of any fraud, we think that the court would be justified in assuming that similar errors upon the opposing ticket, in the ballot and the counting, would likewise appear throughout the remaining 500 precincts. We think this contention of the contestors is carrying the doctrine of presumptions to an unwarranted length, and would be extending the decision in Tarr v. Priest beyond any limits indicated by the language of that decision.
It is true that the right of franchise is perhaps the most valuable privilege of citizenship. Every citizen is entitled to the free and untrammeled right to cast his ballot as he desires and to have that ballot counted as cast. The state of Ohio, in order to preserve to its citizens, this inestimable right, has provided a system of voting and of counting the votes calculated to effect in every respect the purity of the ballot. Bipartisan boards of judges and clerks are placed in every voting booth; facilities are afforded for authorized witnesses to observe the counting of the ballots, and as a result the action of the board of deputy state supervisors and inspectors of elections, when the official count has been made and declared, is attended with a presumption of regularity that' is and should be as strong as the similar presumption attaching to the action of other administrative boards. We think it would be unwise to permit that presumption to be set aside except upon evidence which fairly shows such uniformity of error in a very large per *372 centage of the voting precincts involved as reasonably leads tlie court to the conclusion that like errors probably have occurred in the precincts from which no evidence is produced, and to such an extent as, taking into account the neutralizing effect of similar errors on the opposing ticket, which, in the absence of evidence the court may assume if no fraud is claimed or shown, would probably change the result of the election.
It is not claimed that the errors'pointed out are the result of general instructions given to the judges and clerks of election in voting precincts by the county board or by the state officials. If such were shown to be the case a presumption would arise that such instructions had been followed and that like errors would be found in every precinct, and the presumption of errors resulting from instructions of that kind would be made very strong by proof of the giving of such instructions. If the rule announced in the case of Tarr v. Priest were applied and the ballots in the 75 precincts were recounted it is evident that the result could not be changed, even if full force is given to all that is claimed by the contestants. ■ There would therefore be no reason whatever for incurring the expense and loss of time necessary for a recount of the ballots in these precincts.
We have not deemed it necessary to discuss the claimed errors in the method of counting in view of the conclusion at which we have arrived. Some of the methods were clearly erroneous. This much may be said in general, upon the subject of counting ballots in Ohio. No state has gone farther to preserve to its citizens the right to express *373 their choice by ballot, and have that choice properly counted, than has the state of Ohio. Section 5070, General Code, paragraph 9, reads:
“No ballot shall be rejected for any technical error which does not make it impossible to determine the voter’s choice.”
It will be noted that this paragraph is not a direction that the ballot shall be .counted if the intention of the voter can be reasonably ascertained, but it is a positive prohibition against rejecting any ballot for any technical error unless such error makes it impossible to determine the voter’s choice. This provision of our law is in recognition of the fact that we have no literacy test for the franchise in this state and that citizens of all degrees of education and intelligence are expected to exercise the right of franchise.
Upon a careful examination of the entire record in this case we come to the conclusion that the facial court was not in error in declining to direct' a recount of all the ballots cast in the county.

Judgment affirmed.

Kinkade and Richards, JJ., concur.
Judges of the Sixth Appellate District, sitting in place of Judges Grant, .Carpenter and Uieghley of .the Eighth Appellate District.