## CONTESTED ELECTION FOR LONG TERM AS COUNTY COMMISSIONER.

Common Pleas Court of Allen County.

WALTER W. CRAIG v. A. J. GRAY AND J. W. THOMPSON. COMMISSIONER.

Decided, February, 1921.

*County Commissioners—Election of in 1920—Candidate Receiving Lowest Vote—May Contest Election of the Other Two—For the Purpose of Determining Who shall be Given the Long Term.*

1. The candidate for county commissioner who received the lowest vote of the three who were elected in 1920, may contest the election of the other two for the purpose of showing that the vote which he received entitles him to a term of four instead of two years.

2. In such a case in the absence of a demand by all parties for a recount of all the precincts in the county, a recount will be ordered in those precincts only in which irregularities have been shown to have occurred in the official count as certified.

*T. R. Hamilton,* for contestant.

*Eugene T. Lippencott* and *John L. Cable,* for contestees.

BAILEY, J.

At the November election of 1920 contestant and contestees were the candidates of the Republican party for long terms as county commissioners of Allen county. The vote of each candidate was certified to the board of deputy state supervisors of election of Allen county by the precinct officials and as summarized and declared by said board, was as follows:

| | |
|---|---|
| J. W. Thompson received | 13,416 votes |
| A. J. Gray received | 13,413 votes |
| Walter W. Craig received | 13,410 votes |

It will be observed that there is a margin of only six votes from the highest vote to the lowest vote received by these candidates.

Thereupon on December 1, 1920, Walter W. Craig as a contestant took an appeal jointly against the other two Republican candidates from the decision of the board of deputy state supervisors of elections in tabulating and declaring the vote as above stated, and on the 2d day of December two separate appeals were filed in this court, each against one of the contestees above named.

Thereupon and thereafter in accordance with notice served as provided by statute two justices of the peace of this county, to-wit, E. M. Botkin and E. L. Durbin commenced and took the testimony of several of the election officials who acted in seven precincts in the city of Lima at said election, as to the methods such precinct officials adopted and followed in counting the votes for county commissioners, and this testimony was embodied in a transcript containing about 237 pages and this transcript was submitted to the court. By a motion filed in the common pleas court some time prior to the 26th day of January, this year, these three separate appeals were properly consolidated by this court, so that the matter could be heard and disposed of as one case.

On the 26th day of January, 1921, the case came on for hearing in this court, at which time the contestant submitted the transcript of the evidence taken before the justices of the peace and offered certain exhibits in evidence, and rested his case.

Thereupon the contestees offered the oral testimony of several witnesses as to claimed irregularities that occurred in seven precincts outside of the city of Lima, which indicate that the ballots for county commissioners in the several precincts were improperly and illegally counted and returned to the board of deputy state supervisors of elections.

At the last session of the Legislature an act was passed by that body (Ohio Laws, Vol. 108, Part 2, page 1300) by which it was provided that the two persons receiving the highest number of votes for county commissioner at the November election of 1920 would hold their respective offices for a term of four years or until January 1, 1925, and that the person receiving the lowest number of votes for such office, should hold his office until January 1, 1923. On the ground that the contestant has been deprived of a tenure of office for a period of two years, he instituted this contest and hopes thereby to have the court certify him as having received the highest number of votes, or the next highest number of votes, which will make him eligible to a four year term as county commissioner instead of the two year term now accredited to him.

At the inception of the case the contestees raise the jurisdictional, if not the constitutional question that this is not one

of the questions that can be determined by a contest of election, and that the only person who is authorized to institute a contest of election is a party who has been defeated at the poles for the office he seeks. After a careful examination of the statutes upon that question, I am inclined to the belief, and therefore hold, that the contestant has a right to maintain this action on the ground that, if he shows a sufficient number of mistakes to bring him to the point of being the highest, or next to the highest man in the count of the votes, he will be benefited to the extent of two years of service as county commissioner of this county, and the necessary emoluments innuring to him by reason of such service, and especially is this true when we refer to the old equity maxim, "That where there is a wrong there is a remedy." And the only remedy that the court sees available to the contestant, if his contention as to the mistake in counting the ballots is true, is the proceeding he has here instituted, and the court is firmly of the opinion that his action is clearly within the spirit of the statutes of Ohio providing for the contest of elections, if not within the letter thereof.

The court has had no trouble in finding from the evidence that there were irregularities, mistakes and illegality innocently occurring and practiced in counting the votes of the seven precincts in Lima complained of by the contestant, but as to the number of votes involved in that transaction and covered by the mistakes in the count, the court does not now attempt to decide or even estimate.

The court has likewise had no trouble in finding from the evidence that there was a miscount of the votes for county commissioners in the seven precincts outside of Lima concerning which the contestants have offered evidence, so that the question of the mistakes made in counting the votes for county commissioner, long term, in the fourteen precincts brought into the case by all the parties, is perfectly apparent to the court, and the necessary *prima facie* case for a recount of the ballots of said fourteen precincts has been made out, and the court is satisfied from the evidence that a recount of the ballots cast in these fourteen precincts may change the result of the election in respect as to who are the two persons receiving the highest number of votes for that office and thus be entitled to

hold the two four-year terms; and this brings us to the only remaining question involved in the case as to whether or not under the evidence as submitted and received the court would be authorized in ordering a recount of all the ballots for the 103 precincts of the county to endeavor to determine the exact vote cast for these three candidates; and the question of whether or not it was properly counted, declared and certified.

This is a legal question, and we will take a hasty glance at the law before determining this matter.

In the case of *Tarr* v. *Priest,* decided on December 7, 1915, by the Supreme Court of this state and reported in. Volume 93 of the Ohio State Reports, at page 199, and at page 202 of the decision the court says:

"We do not think it was the intention of the Legislature in the enactment of the provision of Section 5090-1 which we have quoted, that the ballots should be used as original evidence for the purpose of discovering errors." And further, "If, upon the trial before the court, there has been evidence tending to show that errors had been committed in any precinct the court was with authority to order a recount of the ballots in that precinct and have such errors as might be found corrected. In the absence of such evidence the court was without authority to act."

In the Cleveland decision, the case of *Dietrick* v. *Andrews et al,* reported in the Seventh Court of Appeals report at page 363, on page 371, 28 O. C. A., 209, the court says:

"But if the assumption of the plaintiff in error be correct, that errors of the kind testified to appear in the remaining 500 precincts, in the absence of testimony to the contrary, and in the absence of any fraud, we think that the court would be justified in assuming that similar errors upon the opposing ticket, in the ballot and the counting, would likewise appear throughout the remaining 500 precincts. We think this contention of the contestors is carrying the doctrine of presumptions to an unwarranted length, and would be extending the decision in *Tarr* v. *Priest* beyond any limits indicated by the language of that decision."

In the case at bar there is absolutely no evidence as to how the count proceeded in any precinct except the fourteen in question, and under the case just cited the mistakes proved in the fourteen precincts are all similar, that is when a Republican

scratched his ticket for commissioner and voted for one Demo-crat without any other mark, except the mark under the emblem on the ballot, such ballot was counted for the Democrat for whom he voted, and for the two Republicans who were not op-posite the Democrat thus voted for. That seemed to have been the usual method adopted in the fourteen precincts, in couning the votes for the long term of county commissioner, and under this Cleveland decision the court has a right to assume that the Democratic ballots were counted in the same method, and in view of the fact that the votes received by the democrat can-didates were more than 2,000 less than the votes received by the Republican candidates, in the absence of a request from all the parties, the court does not deem it necessary or expedient to order a recount of any other than the fourteen precincts hereinbefore mentioned, as it is highly improbable that a recount of all the precincts of the county would change the result of the election for county commissioner. That is to say, that after such recount the Republican candidates would still maintain decisive plurali-ties over their Democratic opponents.

And the court coming now to pass on the admissability of the testimony and the exhibits offered in evidence admits all the exhibits which have been tendered as to the fourteen pre-cincts hereinafter specifically named, together with all testi-mony that was taken subject to objection, and the opposite party is awarded an exception to the admissability of each exhibit.

The court is not concerned in this controversy beyond the public question involved which guarantees the right of every citizen to cast his ballot and have the same properly and leg-ally counted and recorded.

The parties have chosen their ground and the weapons with which they will fight, and as hereinbefore stated, unless all parties join in a request to recount the entire county, the re-count will proceed as to the fourteen precincts hereinafter enumerated and named.

The attorneys may journalize an interlocutary order in ac-cordance with this opinion as to a recount of the ballots cast at the November election of 1920 for county commissioner of Allen county.