# Hummer et al. v. Veu Cassovic et al.

(Decided February 24, 1931.)

E. C. O'REAR, ALLEN PREWITT and I. G. MASON for appellants.

OSCAR M. SMITH for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Some time prior to January, 1894, G. W. Harper, a resident of Logan county, Ky., died, having theretofore made a will, the second paragraph of which is as follows:

"It is my desire and do direct that after my just debts are paid that the balance of the property that may be left, both real and personal, that I may have at the time of my deceased or may hereafter come to me, I will that it shall go to my loving wife Nancy M. Harper to have and to hole, use and control in any way and in such manner as she may wish during her natural life and at the death of my wife all real and personal estate bequeathed to her during her natural life that she may have at her death, it is my desire shall be divided as follows: so much of it

shall go to James Hummer a man of color, now living with me on the following conditions that he live on the place where he now lives and keeps an orderly house and stay there and take care of us after the death of my wife, shall be entitled to the following property, The house in which he lives now and one acre of land surrounding it and also in addition fifty-five acres of land bounded as follows, On the east by John Orndorff and on the north by Fleming Smith, thence running west far enough to contain fifty-five acres of land and the remainder of real and personal estate that may be left after the death of my wife, it is my desire that it shall go to Hattie Boyd daughter of G. W. and E. T. Boyd.''

The evidence shows that James Hummer went to the home of G. W. Harper something over sixty years ago when he was a very small boy. He remained with Mr. Harper as a servant, or employee, and as a tenant cropper up to the time of Mr. Harper's death, and after the death of Mr. Harper he contniued on the farm as a cropper, occupying the house he lived in at the time of Mr. Harper's death. Mrs. Nan Harper, the widow of G. W. Harper, died in the year of 1928, and according to the proof, James Hummer died intestate eighteen months or two years prior to her death and left surviving him a widow, who has since died, and three sons, Thomas Hummer, Ely Hummer, and Alley Hummer, all of whom had attained their majority. After the death of his father, Thomas Hummer took up the duties of cultivating the lands for Mrs. Harper, under the same arrangement that she had with James Hummer, and continued to do so until her death.

On September 12, 1928, Thomas Hummer and his two brothers, who are appellants here, filed a petition in Logan circuit court in which they set up the will of G. W. Harper, and a portion of the will of Mrs. Nan Harper, and alleged that James Hummer up to the time of his death kept and performed all of the conditions and considerations required of him in the second paragraph of the will of G. W. Harper, and that after the death of James Hummer and up to the time of the death of Mrs. Nan Harper, they had faithfully kept and performed all of the conditions imposed upon James Hummer by the

will of G. W. Harper. They further alleged that Mrs. Hattie Boyd Veu Cassovic, nee Hattie Boyd, mentioned in the will of G. W. Harper, was making claim to the lands devised to James Hummer under said will, and that in order to clear the title and determine the owner of said lands they asked for a construction of the will and that Hattie Boyd Veu Cassovic be adjudged to have no interest in the lands claimed by them as the only heirs at law of James Hummer.

To this petition the defendant Mrs. Hattie Boyd Veu Cassovic and her husband filed an answer, in which they denied the plaintiff's allegation that James Hummer and the plaintiffs had performed the conditions imposed by the will, and in a second paragraph affirmatively alleged that James Hummer failed to carry out the conditions imposed upon him by said will and the devise to him was thereby defeated, and that under the provisions of the will the property passed to the defendant Mrs. Hattie Boyd Veu Cassovic.

The plaintiff Thomas Hummer gave his own deposition and the depositions of M. W. Ogles, Vernon Barker, and S. Ellis Harper, were taken by plaintiffs. The defendants took the depositions of Mrs. Sallie Barker, Mrs. Nannie Ogles, E. C. Flowers, Mrs. Bessie Page, and Mrs. E. C. Flowers.

Three of the witnesses for appellee were women who had lived with Mrs. Harper after the death of her husband, either as members of the family or in the capacity of servants. One of these women, Mrs. E. C. Flowers, made her home with Mrs. Harper for twelve years. These witnesses were in a position to know the character of services rendered to Mrs. Harper by James Hummer. They all stated that he planted, cultivated, harvested, and housed or marketed the crops from the farm. That he hauled and placed the coal in Mrs. Harper's coal house, and cut and hauled her wood. He plowed her garden, fed and cared for her live stock. None of them testified to any act of unkindness, disrespect, or insubordination upon his part toward Mrs. Harper, and some of them testified that he always responded when she called upon him for any services. These, and practically all of the other witnesses for the appellee, testified that James Hummer at all times kept and maintained an orderly house, and there is no evidence to the contrary on that point. The evidence shows that Mrs. Harper had

the utmost confidence in the honesty and business judgment of James Hummer and left to him the control and the management of the farming operations and the marketing of the crops, and as far as the evidence discloses she never made any complaint as to his conduct of her affairs. On the other hand, the record discloses that in her will she devised and bequeathed to James Hummer certain lands and personal property, and in connection with her bequest to him she expressed the desire that he should have the property devised to him by her husband.

Mr. E. C. Flowers testified that at Mr. G. W. Harper's death his farm was in a high state of cultivation, but that at the time of the death of Mrs. Harper it was in a rundown condition. He also testified that on two or three different occasions he advised James Hummer to strip out his tobacco so as to get it on an early market, but that Hummer failed to follow his advice and that when he did market the tobacco the price had materially declined. He admitted, however, that farmers often lose money by reason of error in judgment as to when crops should be marketed.

It is shown by the evidence that James Hummer had an estate of something over $3,000 at the time of his death, consisting of notes, bonds, and cash. There is evidence that in the latter years of her life Mrs. Harper was at times without ready cash and at the time of her death there were no funds to pay her funeral expenses. It appears, however, that these expenses were later paid out of the proceeds of crops from the farm. The foregoing, and the further evidence that James Hummer did not perform such services for Mrs. Harper as are usually performed by house servants or nurses, is all the evidence tending to show that this negro servant was remiss in his duties to Mrs. Harper, or that he failed to keep and perform the conditions and considerations recited in the will of Mr. Harper.

After the death of James Hummer, his son Thomas, who was then about forty years of age, took up the duties where his father had left off, carrying on the farm operations under the same arrangements and in practically the same way as his father had, and it appears that Mrs. Harper had the same high regard for him with respect to honesty and good business judgment as she had for his father.

One witness testified that Thomas Hummer, on one occasion, took Mrs. Harper to the home of a neighbor, but that he refused to come for her at the time she desired to return to her own home, but it later developed in the evidence that he had to be elsewhere at the time she desired to return and the neighbor she was visiting testified that Thomas would have come for Mrs. Harper at any other time. There is also a bit of evidence showing that at one time Mrs. Harper gave to one of these negroes $50 when she only meant to give him $10. This evidence stands unexplained, but there is nothing to show any intentional wrongdoing upon the part of the negro to whom the money was paid.

So much of the will as related to the devise to James Hummer was read to three or four of defendants' witnesses, and they were askd, in substance, if in their judgment or opinion he performed any or all of the conditions set forth in the will. One witness was indefinite, but the others answered in the negative. Such answers were mere conclusions of the witnesses and of no evidential value whatever.

Evidence that James Hummer accumulated an estate of over $3,000, and that in the latter years of her life Mrs. Harper was often without cash, is made the basis for argument that James Hummer failed in his duties toward Mrs. Harper.

From the evidence it appears that James Hummer was possessed of business acumen and qualities of frugality and thrift, not altogether common to members of his race. He lived modestly in his cabin home, and, according to the evidence of Mr. E. C. Flowers, was putting his savings out at interest twenty or twenty-five years before his death. The total appraisement of his estate was $3,250.87, including notes and bonds to the amount of nearly $2,000. So in addition to his habits of industry it appears that he prudently invested his savings through a long course of years.

The evidence for appellees simply shows that the method of accounting between Hummer and Mrs. Harper afforded to him opportunity for dishonesty and questionable conduct in his dealings with her, but in the absence of any proof of such acts or conduct on his part, the court should not go out into a field of speculation to say that his life's accumulation was the result of ques-

tionable dealings, rather than the reward for prudent administration of his own affairs.

As might naturally be expected, Mrs. Harper lived in a more pretentious manner than did her negro tenant. Difference in stations in life necessitate difference in standards of living. She owned an automobile and maintained a home in keeping with her social position. Yet she was not without cash except at times during the last two or three years of her life, and the proof discloses that immediately preceding this period of stress, she had a cash accumulation of $600, which was largely dissipated by extravagant or other methods of a maid servant.

The evidence shows that James Hummer was receiving a portion of the crops from the farm at the time of Mr. Harper's death and he occupied a cabin home on the place. After the death of Mr. Harper, he continued to occupy this cabin and to go on with the farming operations the same as while Mr. Harper was living, and not only so, but he marketed the crops and paid over to Mrs. Harper the proceeds of her share. The evidence does not disclose a single instance in which he failed to account to Mrs. Harper for any money due her, or that he ever failed or refused to comply with any request that she made of him.

In the light of the foregoing evidence, we cannot say that the devise to James Hummer failed because of nonperformance of the conditions mentioned in the will of Mr. Harper.

There is a sharp conflict between counsel for appellants and counsel for appellees as to whether the conditions mentioned in the will of Mrs. Harper were conditions precedent or conditions subsequent; appellant's counsel asserting that the property being devised to Thomas Hummer on the conditions imposed without any devise or limitation over in the event of his failure to perform the conditions, the title vested in him at the death of the testator. On the other hand, counsel for appellees contended that they were conditions precedent and the devise failed because of the failure of James Hummer to keep and perform the conditions.

In the case of Grubbs, Ex'r, et al. v. Grubbs, Ex'r, et al., 190 Ky. 258, 227 S. W. 272, 273, the court had for consideration practically the same question as presented

here. In that case Mrs. Grubbs devised to her son, W. C. Grubbs, certain real estate on the following conditions:

"Provided that my son W. C. Grubbs shall live with me and my husband, John W. Grubbs, during our lives and shall take care and provide means of support for us during our lives."

By another paragraph of her will she gave to her children, not mentioned, the remainder of her real estate upon certain conditions. The chancellor in the lower court held that the conditions to be performed by W. C. Grubbs were conditions precedent to the vesting of title in him, and the conditions not having been fulfilled on account of the death of W. C. Grubbs, his mother died intestate as to the realty devised to him. This court reversed the judgment of the lower court, saying:

"When there is no devise or limitation over to take effect upon the failure of performance of an annexed condition, the failure to perform the condition, though precedent, does not work a forfeiture to the devise; such conditions being construed to be a subsequent condition. . . .

"In the instant case there is no disposition of the estate in the event of W. C. Grubbs' failure to make the proper provision for his parents, from which it seems impossible, the other parts of the will considered, to escape the conclusion that W. C. Grubbs took vested estate in remainder in the land mentioned, subject, however, to a charge or lien for the value of the care and maintenance contemplated, to the extent that he failed to so provide for either or both of his parents."

In the instant case James Hummer is devised his cabin home with one acre of land upon which it stands, and an additional fifty-five acres subject to the life interest of Mrs. Harper, provided he performs certain conditions, and the remainder of testator's lands at death of Mrs. Harper to go to Hattie Boyd, now Hattie Veu Cassovic, so this real estate was devised to James Hummer upon certain conditions without any devise or limitation over in the event of nonperformance of these conditions by him. Therefore, measured by the rule laid down in the Grubbs case, he took a vested interest in the real

estate so devised to him at the death of the testator, subject, however, to a charge or lien for the value of the services to be rendered by him to Mr. and Mrs. Harper to the extent that he failed, if he did fail, to perform such services.

The title to the property devised to James Hummer having vested in him at the death of G. W. Harper, subject to the life estate of Mrs. Harper, it passed by inheritance at his death to appellants as his only children and heirs at law; and it appearing from the evidence that there was no failure upon the part of James Hummer to perform the conditions mentioned in the will, it is free from any lien or charge in that respect.

For the reasons indicated, the judgment is reversed, and the cause remanded to the lower court with directions to enter a judgment in conformity with this opinion.