W. E. HARRIS, C. E. LENDERMAN, R. R. REINS, JOE R. BARBER, AND L. B. DULA, COMPOSING THE MAYOR AND BOARD OF ALDERMEN OF THE TOWN OF WILKESBORO, NORTH CAROLINA, v. T. S. MILLER, REGISTRAR, FRED HENDERSON AND WILLIAM O. JOHNSON, JUDGES OF THE TOWN ELECTION, R. M. BRAME, JR., CHAIRMAN, JOE M. PEARSON AND J. C. GRAYSON, COMPOSING THE COUNTY BOARD OF ELECTIONS FOR WILKES COUNTY.

(Filed 20 November, 1935.)

**1. Appeal and Error J f—In injunctive proceedings the Supreme Court may review findings of fact of the court below.**

It will be presumed on appeal that the lower court found facts sufficient to support his judgment when there are no findings of fact and no request therefor, but in injunctive proceedings the Supreme Court may review the evidence, and where presumptive findings sufficient to support the judgment cannot be approved upon the record, the judgment of the lower court will be reversed upon error assigned and shown.

**2. Elections I c—Upon facts appearing of record in this case it is held that purported election was invalid.**

Where, in injunctive proceedings involving the validity of an election, it appears from the record on appeal that the ballots cast had been adjudged illegal, that legal ballots were denied those who presented themselves to vote, that many registered voters who came to the polling place to vote were denied the privilege of voting, and that the polls were open for voting less than two hours, the judgment dissolving the temporary restraining order entered in the cause and directing the canvassing of the ballots and the declaration of the results of the election will be reversed, since upon the facts appearing of record no valid election had been held.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by the plaintiffs from *Clement, J.,* at June Term, 1935, of WILKES. Reversed.

This was an action, brought by the plaintiffs, who were the mayor and aldermen of the town of Wilkesboro, against the defendants, who were the registrar and judges of the town election and the members of the county board of elections of Wilkes County, to restrain and enjoin the use by the defendants, in the election of a mayor and aldermen of Wilkesboro on 7 May, 1935, of ballots prepared by the county board of elections and bearing the facsimile signature of R. M. Brame, Jr., chairman. The plaintiffs were candidates for reëlection and contended that the proper ballots to be used in the municipal election on 7 May, 1935, were those prepared by them and bearing the facsimile signature of O. F. Blevins, town clerk.

The defendants contend that the ballots bearing the facsimile signature of Brame (hereinafter called the Brame ballots) were prepared in accord with chapter 108, Public Laws 1931, under which municipal elections in Wilkes County are held, and were therefore the proper ballots to be used; and the plaintiffs contend that the ballots bearing the facsimile signature of Blevins (hereinafter called the Blevins ballots) were prepared in accord with chapter 164, Public Laws 1929 (General Elections Law), and were the proper ballots to be used. On the Blevins ballots the names of the candidates on each platform were grouped and so arranged as to enable the voters to vote for a group, or "straight ticket," by making a single cross-mark in a circle at the head of the ballot; and on the Brame ballots the names of the candidates were so intermingled as to require the voters to mark each individual candidate for whom they desired to vote.

The cause came on to be heard before Daniels, J., on 6 May, and he issued a temporary order restraining the use of any other than the Blevins ballots; and at 11 a.m., 7 May, 1935, after answer had been filed by the defendants, and after argument had been presented for both plaintiffs and defendants, Daniels, J., made his temporary order permanent, adjudging, *inter alia:* "As to the voting of any other ticket other than the official ballot prepared by the board of aldermen and bearing the facsimile of the town clerk, to wit: O. F. Blevins, the injunction is made permanent, and the defendants, their agents, employers, and attorney, are enjoined and restrained from using any other ballot."

Notwithstanding the two foregoing orders of Daniels, J., 57 of the Brame ballots were allowed to be cast, and notwithstanding 800 of the Blevins ballots were furnished to the defendants, they failed or refused to make them available at the polls. There were approximately 400 voters registered for the election, and no ballots were cast other than the aforesaid 57 Brame ballots. The polls were opened for voting between eleven and twelve o'clock and remained open less than two hours. In the afternoon of 7 May, 1935, Daniels, J., after finding that citizens of Wilkes-

boro entitled to vote had been deprived of their privilege, and that all votes cast had been cast with illegal ballots, restrained the defendants from canvassing and reporting any election returns, "or signing same from ballots cast which bore the facsimile signature of R. M. Brame, Jr., chairman of the Wilkes County board of elections, instead of O. F. Blevins, town clerk," and directed the sheriff of Wilkes County "to seize the ballot boxes, containing the illegal ballots cast," together with the poll books, and to seal and turn the same over to the clerk of the Superior Court; and further ordered the defendants to appear before him on 8 May to show cause, if any they had, why his order should not be made permanent.

On Friday, 10 May, Daniels, J., on his own motion on account of his own physical exhaustion, "set this cause to be heard before the judge holding the June Term of Wilkes Superior Court, commencing on 3 June, 1935, to be heard on 4 June, 1935, at two o'clock p.m., in the court room in Wilkesboro."

The defendants objected and excepted to the several orders of Daniels, J., and gave notice of appeal to the Supreme Court, but never perfected any appeal.

The cause came on to be heard before Judge Clement, the judge holding the courts of the 17th Judicial District, at the regular June Term, 1935, of Wilkes County Superior Court, and he dissolved the order of Daniels, J., impounding the ballot boxes and poll books, and ordered the same returned to the defendants Miller, Henderson, and Johnson, registrar and judges of the election, respectively, and authorized and directed them to canvass the ballots and declare the result of the election. To this judgment of Clement, J., the plaintiffs objected and excepted, and appealed to the Supreme Court, assigning errors.

*Chas. G. Gilreath, J. M. Brown, Trivette & Holshouser, F. J. Mc-Duffie, and H. A. Cranor for plaintiffs, appellees.*

*Fred S. Hutchins, H. Bryce Parker, and J. H. Whicker for defendants, appellants.*

SCHENCK, J. The appellants' assignments of error assail the judgment of Clement, J., for that (1) the ballots which it authorized and directed to be canvassed were illegal and void, and (2) that said ballots were cast in contempt of court, and (3) for that the election officials failed to furnish valid ballots, and (4) that no legal ballots were cast, and those who presented themselves to vote were denied legal ballots, and (5) that the election officials closed the polls shortly after midday and left the polling place.

His Honor found no facts, and it does not appear from the record that he was requested so to do. There would, therefore, be a presumption that he found the facts to be as alleged in the answer, since he entered judgment in favor of the defendants. However, in injunction proceedings, this Court has the power to review on appeal the findings of fact by the court below, when the appellant has assigned and shown error. *Scott v. Gillis,* 197 N. C., 223. *Clark, C. J.,* in *Peters v. Highway Commission,* 184 N. C., 30, says: "In injunction proceedings we can review the evidence."

While we at all times desire to give due weight and consideration to the findings of fact of the judge of the Superior Court, and hesitate in this case to depart from the facts presumed to have been, but not actually, so found, our understanding of the facts as gleaned from the record, more especially from the orders of Daniels, J., from which no appeal was perfected, precludes our approval of such findings as will support the judgment entered. It appears that 57 ballots adjudged to be illegal were cast, that no other ballots were cast, and that legal ballots were denied those who presented themselves to vote, and that many of the 400 registered voters who came to the polling place were denied the privilege of voting, and that the polls were open for voting less than two hours. Under these, and other circumstances that appear from the record, we think it was error to authorize and direct the canvassing of the ballots and the declaring of the results of the election.

We hold there was no valid election, and that the judgment of the Superior Court should be reversed.

Reversed.

DEVIN, J., took no part in the consideration or decision of this case.