Sugar Creek Local School District, Transfer, In re.

Common Pleas Court, Putnam County.

No. 18090.   Decided March 22, 1962.

*Mr. James C. Blair* and *Mr. Walter L. White,* for contestants.

*Mr. Charles W. Daley* and *Mr. William Balyeat,* of counsel, *Messrs. Robenalt, Daley, Balyeat & Balyeat,* for contestees.

*Mr. George Schroeder,* prosecuting attorney, for Board of Elections of Putnam County.

(McNEILL, J., of Van Wert County, sitting by assignment in Putnam County.)

McNEILL, J. At the last election, an issue appeared upon the ballot for the transfer of Sugar Creek Local District to the Columbus Grove School District. The official vote announced was one vote in favor of the transfer. A petition to contest the election was filed alleging that four non-residents and one federal parollee had voted illegally; and further, that the ballot was not in proper form. An answer was filed claiming three additional illegal votes. Because each situation is different, factual detail will appear with each issue.

It is clear that the Court has no inherent power in relation to elections, as such is a political rather than a judicial determination. A court has only such duties and power as may be imposed by statute. *State, ex rel. Shriver,* v. *Hayes,* 148 Ohio St., 681; *Stratton* v. *Moore,* 125 Ohio St., 440; *Thompson* v. *Redington,* 92 Ohio St., 101.

Section 3515.11, Revised Code, provides that an election contest shall be assigned for hearing within thirty days, which was done. The statute further provides that adjournment shall be sought only by affidavit, and such adjournment shall not exceed thirty days. This hearing was adjourned for more than thirty days. However, the hearing was continued on the Court's motion and not by any party's affidavit. It was necessary for the Court to decide many of the questions herein before inquiry could be made concerning the actual vote of witnesses herein. Briefs were asked for and promptly received, and a preliminary opinion rendered within twenty-six days. The case was then assigned for the first available date open to the Court. This is not within the prohibitions laid down in *Jenkins* v. *Hughes,* 157 Ohio St., 186, and *McCall* v. *Board of Education,* 169 Ohio St., 50. The reference of Section 3515.11, Revised Code, to adjournments of not more than thirty days refers to that requested by affidavit, and does not refer to any adjournment on continuance

on the Court's own motion. This is controlled by the first part of the section which provides:

"The proceedings at the trial of the contest of an election shall be similar to those in judicial proceedings, in so far as practicable, and shall be under the control and direction of the court * * *"

The full text of the proposal need not be included in an issue ballot, but a condensed caption and text that will properly describe the issues may be used. The caption of the ballot was correct, but there is a defect in the small type thereunder. The small type of the ballot was as follows:

"WHEREAS, the *Putnam County Board of Education* prepared a resolution on July 20th, 1961, to transfer the Sugar Creek Local School District to the Columbus Grove Local School District, pursuant to Section 3311.22, Revised Code, qualified electors residing in the Sugar Creek Local School District have petitioned to submit to a vote the proposal *of the Board of Education of the Sugar Creek Local School District* to transfer the territory of the Sugar Creek Local School District of Putnam County to the Columbus Grove Local School District of Putnam County, the proposal is subject to the acceptance of the receiving Board of Education." (Emphasis ours.)

This language is ambiguous on its face, as it cannot be determined whether the resolution was that of the Putnam County Board of Education or the Board of Education of the Sugar Creek Local School District.

The Supreme Court, in two recent cases, *Beck* v. *City of Cincinnati*, 162 Ohio St., 473, and *Alexander* v. *City of Toledo*, 168 Ohio St., 495, set aside issues because the language contained in the caption was unauthorized, argumentative, misleading, and coercive. In this case, the error did not occur in the caption, and is not argumentative or coercive. The most that can be said no doubt is that it is ambiguous.

In the case of *Moore* v. *Thompson*, 161 Ohio St., 339, the court held that irregularities in the form of the ballot which were not caused by fraud and which neither misled voters nor interfered with the full and fair expression of the voters should not effect a disfranchisement of the voters.

This is true in this case. There could be no doubt in any

voter's mind that they were voting on a transfer as to whether the Sugar Creek Local School District should be transferred to the Columbus Grove District. The only ambiguity was just exactly what steps were taken to bring this about. With "School District" used six times and "Board of Education" three in this short paragraph it is doubtful if many voters carefully read through all the details. There is no evidence in this case that anyone was misled. The only witness offered was a member of the School Board and he admittedly couldn't have been misled as he was fully acquainted with all details. No other evidence other than the ballot itself was offered.

It possibly could be argued that if the wrong board only was contained on the ballot, it could possibly be argumentative, as some people might vote because of the action of such board. However, the argument cannot prevail as if anyone did follow through all the language, the only conclusion could be reached was that it was impossible to tell who originated the resolution. Thus, the facts of this case are within the rule of *Moore* v. *Thompson, supra*, rather than *Beck* v. *Cincinnati, supra*, and *Alexander* v. *Toledo, supra*.

There were two disputed ballots which were cast in the affirmative. The unofficial tabulation, before counting these two ballots, was a one vote loss of the issue, while after the two ballots were counted, the issue carried by one vote. These disputed ballots involved a federal parollee and a college student.

The federal parollee appeared at the voting place, asked the judges if he should vote, who, not being sure of the immediate answer, instructed him to vote and put his ballot in the disputed ballot envelope. This ballot was later ordered counted by the board of elections. Article V, Section 1 of the Ohio Constitution provides that every citizen of the United States of the age of twenty-one, who shall have been a resident of the state one year, shall have the qualifications of an elector. Article V, Section 4, provides the General Assembly shall have power to exclude from the privilege of voting certain persons, including those convicted of a felony or infamous crime.

Section 2961.01, Revised Code, provides for disfranchisement of a person convicted of a felony in this State. Section 2961.02, Revised Code, provides for disfranchisement of anyone

who has been imprisoned in the penitentiary of any other state. There is no Statute relating to disfranchisement of those convicted of federal crimes, nor does the United States have a disfranchising statute. Therefore, under Article V, Section 1, the federal parollee was entitled to vote, the legislature not having enacted a statute disfranchising him.

As to the question of the absentee ballot by the claimed college student, it is undisputed that the student lived in the Sugar Creek Local School District with his parents prior to his entrance at Bowling Green State University. Early in April, 1961, around Easter time, in the middle of the semester he contacted mononeuculosis and was forced, with the permission of the school authorities, to withdraw because of illness and return to the home of his parents. Sometime in May he was married, and then resided with his wife's parents in Allen County, Ohio, until July 12th, when he and his wife found a furnished apartment.

On June 21, at the opening of the summer term of Ohio Northern University, he transferred there, commuting back and forth from Lima to Ohio Northern, approximately thirteen miles away, and has attended and is still attending this university. It is undisputed that he does not have any idea where his permanent residence will be until he graduates from college and finds out where his employment will be.

This involves the interpretation of Section 3503.02 (I). Section 3503.05, Revised Code, referring to voting residences of students is not applicable as that refers to a person who resides in the county in which such institution is located. In this case, Ohio Northern is located in Hardin County, and Lima is located in Allen County. Section 3503.02 (I), Revised Code, provides:

"If any person attends an institution of learning, his residence * * * if any, shall be determined according to the place where he resided prior to admission to such institution, and not by the place where he resides while attending such institution, unless such person shall establish or acquire a home for permanent residence."

Under this section, there is no requirement that the place where he resides while attending an institution must be in the same county as the institution.

In addition, Section 3503.02 (C), Revised Code, provides that a person shall not be considered to have gained a residence in any county of this State into which he comes for temporary purposes only, without the intention of making such county his permanent place of abode.

In this case, it is quite clear that from the time in May that he was married and left Sugar Creek Local School District, his first residence in Lima was purely temporary, residing with his wife's parents only until such time, wherever it may have been, until he obtained some living quarters of their own.

Thus, while living with his wife's parents he gained no residence in Allen County. Prior to finding an apartment of his own he re-entered college and at the time of his re-entry, his last permanent residence was Sugar Creek Local School District. and Section 3503.02 (I), Revised Code, would then apply.

Thus, it is clear that if a student is forced out by illness, and. although he changed institutions, he resumed his student status at the earliest possible moment, and during the interim has not acquired a new residence, under Section 3503.02 (I), Revised Code), he retains his original voting residence.

In addition, considering this vote, it must be remembered there is a presumed validity. of a vote until the contrary is shown. This is cited throughout all the cases cited hereinafter.

Further, there is a presumption that once one has a residence, that this residence continues until the contrary is shown. *Jones on Evidence*, 5th Ed., Vol. 1, Section 66, Page 117, Note N. This seems to be the rule in Ohio in both respects. *Wickham* v. *Coyner*, 30 O. Circuits, 765 (20 O. C. D., 765). In that case it was pointed out that the presumptions were going in opposite directions. However, in this case, both presumptions act together in favor of the legality of the vote. Thus, considering the facts set forth above, the presumption, and the plaintiff's burden of proof, it cannot be said that this vote is illegal.

The next question concerns that of Mr. and Mrs. Blockberger. There is no dispute in this case that they voted illegally. Their residence was outside of the Sugar Creek Local School District. However, their children attended Sugar Creek Local. The attendance, however, was by a mutual arrangement between school boards, which amounted to accepting pupils as tuition pupils and cancelling each other off, without making any change

in the district. Thus, the Blockbergers innocently thinking that if their children attended the district, they were residents of the district, voted, although residing outside of the district.

From the record, it also appear that Mr. and Mrs. Watkins innocently voted improperly. They formerly resided in the Sugar Creek Local School District and had paid rent there until October 1st. The election was held November 7th, and had they moved October 1st, they would have been within the 40 days and would have been entitled to vote at their former residence. Section 3503.02, Revised Code.

Contestees claim that at least by the 23rd of September, the Watkins had moved to Leipsic, and therefore, more than forty days had elapsed and they should have voted in Leipsic, and were not entitled to vote in Sugar Creek Local School District.

This issue is somewhat confused by the fact that they had rent paid on their residence in the district until the 1st of October, and up until that time they did remove things from the residence. However, it is undisputed that they did enter their oldest daughter in school at Leipsic after Labor Day, because they intended to move to Leipsic as soon as possible. They rented a house in Leipsic around the 15th of the month; they withdrew the rest of their children from the Sugar Creek Local school on the 15th. However, the next week the Sugar Creek school was closed because of the county fair. On the 23rd their children did not return to Sugar Creek, but entered the Leipsic school. On the 21st they notified the postmaster of their change of address to Leipsic. The greater part of their furniture, including their cooking utensils and stove was moved during the week of the 15th. Orders were given the utility companies to discontinue services, and the services were discontinued prior to the 23rd. From the foregoing, it is obvious that by the 23rd of September, the family had moved and was living in Leipsic and so intended, having moved the necessary furniture and cooking equipment, and had enrolled all their children in the Leipsic school. Their post office address had been changed to Leipsic and there were no utilities on the farm in the Sugar Creek Local District. Although their rent was paid until the 1st of October, only minor items that had been left behind were moved from the district to Leipsic.

It is true that intention usually is a state of mind. However, courts have long held in similar situations, that a person's intentions must be determined by the outward manifestations of those thoughts.

Every outward manifestation of residence conclusively shows a residence in Leipsic by the 23rd. Thus, their votes were illegal.

The other alleged illegal voter was claimed to be Juanita Deck, who lived outside the Sugar Creek Local School District. For almost a year, however, she had been present within the district, not being absent therefrom more than one hundred hours, taking care of her mother.

However, she stated unequivocally on the stand that she regarded her home as that with her husband in the new home that they had built, and that whenever the situation with her mother freed her, she would return to this home. In addition, Section 3503.02, Revised Code, provides that a wife's voting place should be that of her husband, except when they have separated and live apart. In this case, there is no question of any separation, as both Mr. and Mrs. Deck indicated that they were firmly married, Mr. Deck spending as much time as possible with his wife at her mother's place, and it was only because of the illness of her mother that this situation resulted.

However, at the time of the original hearing, no testimony was introduced to show where the Deck residence actually is located, except by township. Parts of this township are in the Sugar Creek Local School District. The Court could make no presumption that the actual residence was without that portion.

At the re-hearing a stipulation was offered that their residence was outside of the Sugar Creek District. If the stipulation is given effect, it would appear that Mrs. Deck voted illegally, being a non resident of the district. Whether or not the stipulation can be considered by the Court is doubtful. At the hearing within the thirty day period the evidence was incomplete. The Court continued the case beyond thirty days. The contestants could not. Whether the court can consider testimony other than that specifically reserved beyond the thirty day adjournment period is doubtful. The Court, prior to the ex-

piration of the thirty day period indicated it would allow questions as to the vote of four persons. Mrs. Deck was not one of these. No request to reopen was made within the thirty days. The fact that a stipulation is entered of record is of no consequence if it is not competent evidence. However, this need not be ruled on with finality as it is immaterial to the decision of the court.

Contestees raise the question that a "No" vote should not have been counted. Instead of an "X" made in the box stating "No" to the proposition, a "No" had been written. This in effect created a double negative and raised the question of whether the voter meant no to the "No" or meant to emphasize the "No" by adding a second.

In determining this issue, the court first permitted testimony that there was such a ballot; secondly, introduced the tally sheets determining the total; and thirdly, permitted a counting of the ballots in open court to determine that the questioned ballot had actually been counted as a no ballot.

In the case *Powers* v. *Reed*, 19 Ohio St., 189, it was held that ballots could be properly used in evidence. In a later case, *Dittrick* v. *Andrews*, 7 Ohio App., 363, the court held ballots are not original evidence for proving error or mistake, and the court should order the ballots to be opened and counted only if a prima facie case of error or mistake is made out, without the use of such ballots. This was done in this case. The use of the ballot was not to prove the ballot, but only to show conclusively that it had been counted as a no vote.

It is the opinion of the court that this ballot was improperly counted and should have been rejected. This is almost identical with the fact situation presented to the court in *Village of Richwood* v. *Algower*, 95 Ohio St., 268. In that case the court held, at page 271:

"The placing by the voter of the word 'No' in the blank space to the left of the negative proposition was a double negative, and it is not clear whether the voter intended to emphasize his dissent from the affirmative proposition submitted, or to emphasize his dissent from the negative proposition * * *."

Contestants attempted to distinguish this because of a slight difference in the ballots. However, this appears to the court

as immaterial as the proposition is the same. A double negative occurred.

The next question is an interpretation of Section 3515.12, Revised Code. One part of the section provides that any witness who voted at the election may be required to answer touching his qualifications as a voter and for whom he voted. Is this section totally or partially contra to the Constitution?

The rule in many states is that the Constitution carries an inherent provision for secrecy of the ballot. 90 A. L. R., 1362. This appears to be the law in Ohio.

Article V, Section 2, of the Ohio Constitution, provides that all elections shall be by ballot. The Supreme Court in interpreting this section, *State, ex rel. Machine Co.* v. *Green*, 121 Ohio St., 301, held:

"* * * The term 'ballot' designates a method of conducting elections which will insure secrecy, as distinguished from open or viva-voce voting."

Thus, it appears that the provision of Section 3515.12, Revised Code, as to requiring a legal voter to testify how he voted contravenes the State constitution.

However, there is a limitation, as courts have generally held that this applies only to legal votes; that there is no protection of secrecy of an illegal vote. 29 C. J., 281; Wigmore, Vol. 8, Section 2214. *Jones on Evidence*, Section 853 (See notes at Page 500, *McRobbie* v. *Registrar of Ipswich*, 78 N. E. [2d], 498). Thus, under the statute, those who voted illegally might be properly asked how they voted.

When Mr. Blockberger was called and Mrs. Watkins was called and asked whether they voted, they refused to answer on the grounds that it might tend to incriminate themselves. Article X, Bill of Rights, Ohio Constitution. In *State, ex rel. Bambach* v. *Markely*, 9 O. C. C. n. s., 561, the Court by dicta, at Page 572, stated:

"it is further contended that the witnesses could not be required to answer as to whom they voted for, because the answer might tend to criminate them. This is a personal privilege on the part of the witnesses. None of the witnesses in this case claimed that privilege until after they had voluntarily testified that they had voted. And, if a witness discloses that he did vote, and it is shown clearly to be an illegal vote, then he may

be compelled to answer as to whom he voted for. There may be some doubt as to whether or not the answer to this question disclosing for whom these different witnesses voted would have any tendency to criminate them. In most all crimes the intent is the gist of the crime; and it certainly would be admitted by every one that these electors did not intend to cast any illegal vote, but honestly thought they were casting their votes in the proper precinct.''

The heading under 29 C. J. S., Section 281, P. 401, states:

''While the voter is generally held * * * an illegal voter may be compelled to do so unless he claims a privilege against self incrimination. A legal voter cannot be compelled to testify as to how he voted.''

Section 3599.12, Revised Code, a criminal statute, provides:

''No person shall vote * * * in any * * * general election in a precinct in which he is not a legally qualified voter.''

Intent is not specifically made an element. Unlike some states, our statute does not provide that the act must be knowingly. It is true, as pointed in *Bambach* v. *Markely, supra,* that intent would probably be necessary.

29 C. J. S., Section 325, Page 441, states:

''The general rule stated in Criminal Law Section 29 that criminal intent is an essential element of crime is recognized by the authorities as applying to one charged with the offense of illegal voting. However, there is some conflict among the decisions as to the proper application of this general rule * * *.''

However, the rest of the citation, of considerable length, goes into situations where the court did not apply the general rule. At Page 442 of the same citation, it is stated:

''So the general rule stated in Criminal Law Section 48 that one's ignorance of law furnishes no exemption from criminal responsibility for his acts applies with reference to one charged with voting illegally. However, in applying the general rule that the commission of a criminal offense is not excused by ignorance of the law to the charge of illegal voting there is some confusion among the cases owing no doubt to the difficulty in determining in each case whether the ignorance was attributable to ignorance of law or a mistake of fact or to a

mixed question of law and fact; thus, according to some authorities, to convict one of illegal voting under the statute it must appear that the voter knew a state of facts which would in point of law disqualify him from voting; but according to others a voter is not indictable for illegally voting unless his vote is knowingly cast without right, although he had full knowledge of the facts which disqualified him to vote. * * *"

Thus, what determination would be reached if criminal charges were brought would be at least subject to doubt. Since this court is only passing on this particular matter collaterally and cannot rule with finality, there certainly exists a possibility that the answers may tend to incriminate and the privilege not to testify should be upheld.

Consequently, the personal privilege exercised by Mrs. Watkins and Mr. Blockberger, and by stipulation that of Mrs. Blockberger, were sustained.

As to Mr. Watkins and Mrs. Deck, if her testimony is admitted, a different situation obtains. At the main hearing they both testified that they voted and did not exercise their rights under the Constitution. Once having voluntarily testified to the illegal act, they cannot now claim a privilege of not testifying as to how they voted. The voting is illegal; not how they voted. *Bambach* v. *Markely, supra.* Because of the illness of Mr. Watkins, it was stipulated by counsel that he would say he voted against it. It also was stipulated that Mrs. Deck would testify that she voted for it.

Thus, deducting the "No," "No" vote improperly counted leaves the issue passing by two votes. If the testimony of Mrs. Deck is received her vote set off against Mr. Watkin's vote still leaves a two vote margin. If his is received and hers is not, the passing margin is three votes. However, the actual count is in doubt. Either there is a majority of three votes, or two votes, for the issue, with three votes that cannot be determined. Since this is an issue vote a tie would result in defeat of the issue. Thus, the ruling on Mrs. Deck is immaterial.

At the outset, it might appear there might be a question of whether there is any power in the court to set aside an election in an issue case. Section 3505.14, Revised Code, provides that the court shall determine which candidate was elected, or

whether the issue were approved, or rejected. It further provides if the court find that no persons were elected, the judgment be that the election be set aside. However, this appears to be determined in *Otworth* v. *Bays*, 155 Ohio St., 366.

Contestants claim that the decision of the Supreme Court in *Otworth* v. *Bays, supra,* makes it mandatory on this court to void the election under the present state of facts. In that case, the court stated, Syllabus 1:

''Where irregularities in an election are so great and so flagrant in character as to render it impossible to separate the illegal from the legal votes and raise a doubt as to how the election would have resulted had such irregularities not occurred, they must be deemed fatal to the validity of the election and warrant the rejection of the entire vote of the election district.''

*Otworth* v. *Bays, supra,* is based upon non-Ohio citations, three appearing in 18 Am. Jur., 330, Section 224, being Kentucky cases, and *Poor* v. *Town of Duncombe* (Iowa), 2 N. W. (2d), 294. These will be discussed later.

The problem presented by the *Otworth case,* is whether irregularities must be great and flagrant before the rule applies; or whether it is applied in all circumstances where the outcome may be uncertain. It must be remembered in the *Otworth case,* there were double ballots given to and voted by eleven voters, which by statute is made fraudulent. Section 3505.28, Revised Code. *In the Matter of Contest of Election of the Carthagena Local School District* (Mercer County), 7 Ohio Opinions (2d), 470, where a substantial number of voters were deprived of the right to vote because of failure of the election officials to have sufficient ballots on hand, the Supreme Court rule was followed. Prior to the *Otworth case,* it appeared that in a contest of election the contestant had the burden of not only showing sufficient illegal votes were cast to change the results, but for whom they were cast. *Kern* v. *Schwinke,* 19 Ohio Opinions, 299. This was not announced in *Wickham* v. *Coyner, supra,* but the rule was applied. However, if errors were great, the rule in the *Otworth case* would be used. *Dittrick* v. *Kelly,* 20 Ohio Opinions (ns), 86 (dicta).

In an effort to determine whether it was the intention of the Supreme Court to apply the rule in all cases, or whether it

should be limited to those cases where the irregularities are great and flagrant, the court has attempted to examine the authorities of the other states. This has been somewhat difficult as the citations both in American Jurisprudence and Ohio Jurisprudence cite the same cases for various things under various headings.

In many states, the pronouncements are of no aid as the questions before the courts were mere irregularities in voting procedure, and not a question of the count of the vote.

In addition, it appears that in New Mexico, Texas, and Alabama the statutes provide the number of the ballot is to be placed opposite the name of the voter so in those states an accurate count can always be determined by the Court. The only question arising in those states is what rule to apply if the statute is not followed. These are errors of the election officials and are not pertinent here.

It further appears West Virginia, by statute, requires that the contestant must prove the illegal votes and for whom they were cast. *Maynard* v. *Hammond*, 79 S. E., 295. In Iowa, *Poor* v. *Town of Duncombe, supra,* and in Delaware, *State, ex rel. Green,* v. *Holzmueller,* 5 A. (2d), 251, the general rule was announced as by our Supreme Court, but under the circumstances it was not necessary to consider the question we have here. In *Poor* v. *Town of Duncombe, supra,* all the claimed illegal votes were far less than the majority, and in *State, ex rel. Green,* v. *Holzmueller, supra,* an estoppel was invoked.

The following states seemingly apply the rule in all cases, that whether or not irregularities are great or flagrant, if the vote is uncertain, the election should be voided. ARKANSAS: *Horne* v. *Fish,* 127 S. W. (2d), 623; *Webb* v. *Boden,* 187 S. W., 461; FLORIDA: *Griffin* v. *Knoth,* 67 So. (2d), 431; *State, ex rel.* v. *Rinehart,* 192 So., 819 (based on the Kentucky decisions and Colorado decisions, which will be discussed later); MISSISSIPPI: *Hayes et al* v. *Abney,* 188 So., 533; *Lopez* v. *Holdeman,* 69 So. (2d), 903; SOUTH CAROLINA: *State, ex rel. Davis,* v. *State Board,* 68 S. E., 676; *Hughes* v. *Blackwell,* 159 S. E., 785; *Gunter* v. *Gayden,* 65 S. E., 948. All of these cases, except the *Florida cases,* involved poll tax cases.

In the following states it appears that the contestant must show that there were illegal votes and for whom they were cast.

This applies equally to issues as well as to the election of officials. In such case, only those that may be identified are deducted, or the vote is pro-rated and subtracted from the candidates in the precinct, according to their vote. INDIANA: *Humphries* v. *McAuley*, 187 N. E., 262 (defect in voting machine causing some ballots not to register); *Brown* v. *Grzeskowiak*, 101 N. E. (2d), 639; KANSAS: *Olson* v. *Fleming*, 254 P. (2d), 335; *Parker* v. *Hughes*, 67 P., 637; MAINE: *Prince* v. *Skillen*, 36 Am. Rep., 325; MASSACHUSETTS: *McRobbie* v. *Registrars of Ipswich*, *supra* (some absentee ballots illegal because of improper notarization); MONTANA: *Atkinson* v. *Roosevelt County*, 227 P., 811; *Heyfron* v. *Mahony*, 24 P., 93; NORTH DAKOTA: *McDonald* v. *Koths*, 249 N. W., 706; *Torkelson* v. *Byrne*, 276 N. W., 134; SOUTH DAKOTA: *Cameron* v. *Babcock*, 262 N. W., 80; *Briggs* v. *Ghrist*, 134 N. W., 321; VERMONT: *Burke* v. *Beecher*, 144 A., 200 (absentee ballots and sick voter ballots held invalid); WYOMING: *Hamilton* v. *Marshall*, 282 P., 1058 (votes after closing hours); *Fugate* v. *Mayor of City Council of Buffalo*, 348 P. (2d), 76 (illegal absentee ballots).

Next is a series of cases where the rule is announced that the contestants have the burden of proving illegal votes, and for whom they are cast, but indicating that if fraud or great and flagrant irregularities were present, the rule would not apply. ARIZONA: *Morgan* v. *Board of Supervisors*, 192 P. (2d), 236; *Grounds* v. *Law*, 193 P. (2d), 447; IDAHO: *Jaycox* v. *Varnum*, 226 P., 285 (illegal registration of some voters); MARYLAND: *Wilkinson* v. *McGill*, 64 A. (2d), 266; MISSOURI: *Phelps* v. *Fenix*, 134 S. W. (2d), 84; *Armantrout* v. *Bohon*, 162 S. W. (2d), 867; WASHINGTON: *Hill* v. *Howell*, 127 P., 211; WISCONSIN: *Ollman* v. *Kowaleski*, 300 N. W., 183.

In the following states, both rules are applied: California, Colorado, Georgia, Illinois, Louisiana, Michigan, Minnesota, Nebraska, North Carolina, New Jersey, Oklahoma, Pennsylvania, and Tennessee. If the irregularities are great and flagrant, the election is voided. If they were found not to be great and flagrant, even though there was uncertainty as a result, the contestant was held to prove the illegal votes and for whom they were cast.

In the following cases, the election was voided. CALI-

FORNIA: *People, ex rel. Hardacre,* v. *Davidson,* 83 P., 161 (more votes cast than registered voters); COLORADO: *People,* v. *Tool,* 86 P., 229 (precinct officials willfully permitted repeating); *Neeley* v. *Farr,* 158 P., 458 (voters were excluded from voting place located on a coal mine property by armed guards); *Bauldauf* v. *Dunson,* 8 P. (2d), 265 (action of election officials amounted to culpable negligence); GEORGIA: *Howell* v. *Pate,* 46 S. E., 667; ILLINOIS: (Recognized but not applied)—*Weston* v. *Markgraf,* 160 N. E., 215; *Anderson* v. *Pifer,* 146 N. E., 171; LOUISIANA: *Bartmess* v. *Hendricks,* 91 So., 68 (complete failure to follow election laws); *Dowling* v. *Orleans Parish,* 102 So. (2d), 755 (voters exposed to intimidation and reprisal); MICHIGAN: *Attorney General* v. *Miller,* 253 N. W., 241; MINNESOTA: *In re Contest of Election of Vetsch,* 71 N. W. (2d), 652 (the de jure board did not follow any of the election laws; found there was a wholesale violation of election laws, even though not fraudulent); NEBRASKA: *Haggard* v. *Misko,* 83 N. W. (2d), 483 (failure to include legal ballots); NORTH CAROLINA: *Harris* v. *Miller,* 182 S. E., 663 (polls opened less than two hours); NEW JERSEY: *In re Donahay's Contested Election,* 34 A. (2d), 299; *Richardson* v. *Radics,* 35 A. (2d), 425; OKLAHOMA: *Martin* v. *McGarr,* 117 P., 323 (where electors were corruptly and fraudulently deprived of an opportunity to register and vote); PENNSYLVANIA: *Locus Ward's Case,* 3 Clark, 11 (polls open too long); Re: *Duffy's election,* 4 Brewster, 531 (fraud); *Contest of Election of Gollmar,* 175 A., 510 (fraud claimed but not proved); TENNESSEE: *Summit* v. *Russell,* 285 S. W. (2d), 137 (complained general failure of election officials to comply with election laws); *Ingraham* v. *Burnette,* 36 S. W. (2d), 31 (contestee procuring fraudulent votes).

In these cases, it was held that fraud or great irregularities did not exist, and that the burden of proof to prove the vote still remained upon contestants. CALIFORNIA: *Russell* v. *McDowell,* 23 P., 183; COLORADO: *Porter* v. *Johnson,* 276 P., 333; GEORGIA: *Pounds* v. *Pyburn,* 188 S. E., 451; ILLINOIS: *Neff* v. *George,* 4 N. E. (2d), 388; *Boland* v. *City of LaSalle,* 19 N. E. (2d), 177; *People* v. *Birdsong,* 76 N. E. (2d), 185; LOUISIANA: *Lafargue* v. *Galloway,* 167 So., 197; MICHIGAN: *Ellis*

v. *May*, 58 N. W., 483, Minnesota: *Berg* v. *Veit*, 162 N. W., 522; NEBRASKA: *McMaster* v. *Wilkinson*, 15 N. W. (2d), 348; *Mehrens* v. *Election Canvassing Board*, 278 N. W., 252 (non-resident voters); NORTH CAROLINA: *People* v. *Teague*, 11 S. E., 665 (voters outside of district, see: pp. 667, 668); OKLA-HOMA: *In re Big Cabin*, 270 P., 75; *Henry* v. *Oklahoma City*, 108 P. (2d), 148; *Kimberlin* v. *Board of Commissioners*, 189 P., 361; PENNSYLVANIA: *McDaniel's Case*, 2 Clark Penn., 82 (non-resident voter); *Re Contested Election*, 2 Brewster 1 (affirmed in *Shepard's Election*, 77 Penn., 295 pro-rata deduction); TENNESSEE: *Barham* v. *Denison*, 17 S. W. (2d), 692; *Porter* v. *Robbins*, 290 S. W., 396.

The Court has omitted from this discussion the *Kentucky cases*. As previously noted, these are the basis for the note in American Jurisprudence referred to by the Supreme Court, and are the basis for many of the decisions of other courts, regardless of the side of the issue that they take.

Those voiding the election are: *Harrison* v. *Stroud*, 110 S. W., 828 (election officials invited people to vote openly instead of secretly); *Johnson* v. *Little*, 196 S. W., 156 (illegal election board); *Marilla* v. *Ratterman*, 273 S. W., 69 (similarity of illegal methods in various precincts sufficient to show conspiracy of the election and precinct workers).

Those refusing to void the election because of irregularities not being found great or fraudulent and requiring the plaintiff to prove his case and for whom the illegal vote was cast are as follows: *Land* v. *Land*, 50 S. W. (2d), 518 (several minor residence requirements); *Hogg* v. *Caudill*, 71 S. W. (2d), 1020 (voters voting after mandatory closing time); *Gross* v. *Ball*, 81 S. W. (2d), 409 (illegal votes).

The Kentucky rule is well set forth in *Bentley* v. *Wright*, 197 S. W. (2d), 420.

Thus, it will be seen out of 38 states directly passing upon this issue, nine require that a contestant shall prove his case as in any other case, including the actual vote; four hold that it is only necessary in any circumstances to prove the illegal vote and the uncertainty of the election; and twenty apply both rules according to the facts in the case before them—the distinguishing mark being whether there was fraud or whether the irregularities are great or flagrant.

The rules for applying the latter rules are many. In the jurisdictions that apply both rules, the voiding of the election most often occurs because of illegal acts of election officials, illegal acts of the contestee, or flagrant irregularities on the part of election officials. It is refused where there are isolated illegalities, not necessarily the result of acts of the election officials, and in doing so refuse to disfranchise all those who voted legally. The undesirability of disfranchisement is touched upon in *Mehling* v. *Moorhead*, 133 Ohio St., 395.

It is partly because of this case, in considering it in conjunction with the *Otworth case*, that the Court has examined at great length the holdings of other states. It would appear that if the court in the *Otworth case*, were following the majority rule, the rule is limited to fraud or where the irregularities are great or flagrant.

Thus, did the election board fail in its duty in any way? Section 3505.18, Revised Code, provides:

"When an elector appears in a polling place to vote he shall announce his full name and address to the precinct election officials, and in non registration precincts, upon request of the presiding judge, he shall state the county, township, and precinct in which his residence is located. He shall then write his name and address at the proper place in the poll lists provided therefore, * * *"

The record is silent in showing any failure of the board to obey this statute. The only question that could possibly be raised is in connection with the vote of Juanita Deck, and that is immaterial, as it is known how she voted. The record shows that on the absentee ballot and the parollee's ballot these were immediately put in questioned ballots. There is no showing that any member of the election officials had information that the two Blockbergers resided outside of the voting district, or that Mrs. Watkins had moved more than forty days prior to the election. There is no showing that the required questions were not asked.

The answer to the questions required by Section 3505.18, Revised Code, above would not reveal the non-residence, as all three parties thought that they resided in the voting district. This being a rural district, the giving of their address would not

reveal necessarily that they resided outside the district, and as they were mistaken as to their precinct, they would give the mistaken precinct and would be apparently eligible to vote. The record shows no failure of the election officials.

As previously pointed out, there was no fraudulent intent on any of the three voters. They made mistakes of fact, and whether they were mistakes of fact or law, they were all innocent. Their votes may be illegal, but were not fraudulent.

Do our election laws make a guarantee that no illegal ballot shall ever be cast? This does not appear to be the intention of the legislature. Section 3505.18, Revised Code, describes voting procedure. In reading the section, it appears in conjunction with Section 3505.19-20, Revised Code, if one appears at the election board, either asks the questions provided by statute, or compares his signature with the registration list, and such party is not challenged, then he shall proceed to vote. This applies to both voting machines and ballots.

In registration precincts, any elector may challenge the right of any elector to vote. Of course, in such case, the registration lists are open for examination prior to election. In a non-registration precinct, Section 3505.21, Revised Code, provides that any group of persons for or against an issue may appoint challengers and these parties may challenge any voter at any polling place, and upon being challenged, either by a member of the election board or by a challenger, certain detailed questions can determine residence and must be asked as provided by statute.

In this case, there is no evidence that challengers were appointed or were present. If challengers had been appointed, it would only be necessary for them to check the real estate map of the school district to ascertain that the Blockbergers were not residents, and any investigation by the prospective challengers of the prospective voters prior to election would have revealed that the Watkins had moved.

It would appear that these detailed requirements by the legislature, provided that the election board always does its duty, provides the time when a non-resident should be questioned, and upon failure to do so it at least appears that those contesting an election have to take advantage of all the pro-

cedures provided for them. This failure to challenge is touched upon in *Brown* v. *Grzeskowiak, supra.*

To carry out their contentions, the challengers must assume the probability that all three illegal votes were cast in favor of the issue. Considering the evenness and the vote and the law of averages, this would appear improbable, and considering the fact that contestants subpoenaed the Blockbergers and Mrs. Deck, and Mrs. Deck admitted she voted for it, and the contestees summoned the two Watkins, and we know Mr. Watkins voted against it, the actual probabilities are that if all three had testified, the results of the election would not be changed. Of course, this is mere speculation on the court's part, and cannot be considered.

However, for contestants to prevail, a speculation must be made that all three votes would have been cast for the opposite side, as their theory rests upon this contention. Upon their failure to use the machinery set up by the legislature to prevent this situation, can they now ask the courts to make the above assumption?

It may well be that the failure to make a challenge raises an estoppel, *Otworth* v. *Bays, supra; Mehling* v. *Moorehead, supra; State, ex rel. Green,* v. *Holzmueller,* 5 A. (2d), 251.

From the foregoing, it would appear that limited to the exact facts of this case, whether an estoppel is applied, or ones failure to avail oneself of the rights provided by the legislature waives a later assertion of such rights; or whether the *Otworth case,* is limited in this circumstance, as the irregularities are neither great nor flagrant, nor are they chargeable to the election board or to the contestee, that the contestants must fail because of a failure of burden of proof.

Thus, under the limited facts in this case, where three persons innocently and not fraudulently were non residents of the district and voted, a failure to show any dereliction of any duty, or failure to follow any statute on the part of the election officials regarding such three votes, and where the record fails to show that contestants ever appointed challengers or exercised any challenges as provided by statute, the fact that the three votes, regarding them most beneficial to the challengers would make the election uncertain, will not cause the court to void the election.

The court wants to apologize to counsel and parties for taking more than the anticipated time, but believes the opinion itself will explain the delay. The court also feels it is burdening counsel with the length of this opinion, being far longer than any other written by the court, but this appears to be many cases in one, and the court was simply unable to put these matters as succinctly as they should have been.

A Journal Entry may be prepared and submitted accordingly.