THE STATE OF OHIO, APPELLEE, *v.* WILSON, APPELLANT.*

[Cite as State v. Wilson (1978), 57 Ohio App. 2d 11.]

(Nos. C-76660 and C-76796—Decided February 1, 1978.)

*Mr. Simon L. Leis, Jr., Mr. Christian J. Schaefer* and *Mr. William P. Whalen, Jr.,* for appellee.
*Mr. Maury M. Tepper,* for appellant.

BETTMAN, J. Appellant's fifteen assignments of error cover two jury trials under a five-count indictment. The indictment alleged appellant's involvement in three separate incidents: rape and felonious assault upon a University of Cincinnati student on March 10, 1976 (counts I and IV); felonious assault upon a second student on March 29, 1976 (count III); and rape and aggravated robbery of a third student on March 24, 1976 (counts II and V). Counts II and V were ultimately dismissed. The separ-

---

*Reporter's Note: A motion for leave to appeal was overruled June 16, 1978.

ate trials under counts I and IV and count III resulted from the granting of appellant's motion for separate trials.

In case No. C-76660 a jury found appellant guilty of counts I and IV and he was subsequently sentenced to consecutive prison terms of seven to twenty-five years and five to fifteen years, respectively. A second trial held several months later, case No. C-76796, resulted in appellant's conviction on the felonious assault charge in count III. The court sentenced him to five to fifteen years to be served consecutively to the sentences previously imposed in case No. C-76660.

We address first appellant's eight assignments of error in case No. C-76660. Assignment 1 alleges that the trial court erred in overruling his motion to suppress both the evidence seized from his automobile and the victim's identification testimony. Appellant asserts that the incriminating items found in his car were inadmissable as incident to an arrest that was made without probable cause. The identification testimony, he claims, should have been excluded because it was based on a lineup at which he was denied the assistance of counsel. These issues will be discussed separately, beginning with the former.

In order for a warrantless arrest to be constitutionally valid, an officer must have probable cause for the arrest at the time it is made; i. e., he must have sufficient information derived from a reasonably trustworthy source to warrant a prudent man in believing that a felony has been committed by the accused. *Beck* v. *Ohio* (1964), 379 U. S. 89; *State* v. *Fultz* (1968), 13 Ohio St. 2d 79.

The record discloses that the arresting officer had on the previous evening heard a police radio report that a black male between 35 and 45, approximately 5 feet 10 inches in height and of medium build, was wanted in connection with an assault which had occurred in the Clifton area of Cincinnati. The broadcast noted that the suspect had left the scene driving an older model car, described as a black over red Chrysler convertible, about a 1968 model, with rectangular tail lights and a license plate which was believed to have begun with the letter "G" or the

number "6." Such a report received on a police broadcast is in the nature of an official communication and for purposes of determining whether an officer had probable cause for an arrest is considered a trustworthy source of information. *State* v. *Fultz, supra.* With that detailed information in mind the officer observed, at a location several blocks from where the reported assault had occurred, an individual and a vehicle that, according to the evidence, matched the descriptions in almost every particular. The officer had probable cause to arrest. See *State* v. *Baker,* unreported, First Appellate District, No. C-74063, decided Sept. 9, 1974.

The second issue raised by appellant's first assignment of error, dealing with the lack of counsel at a lineup conducted one day after his arrest is also without merit. The record reveals that appellant was not formally charged until after the lineup had been conducted and three witnesses had been given the opportunity to identify appellant in connection with several other sex-related crimes of which he was suspected. Therefore, since the lineup in question occurred prior to indictment, appellant did not have a constitutional right to the presence of counsel. *Kirby* v. *Illinois* (1972), 406 U. S. 682; *State* v. *Hudgins,* unreported, First Appellate District, No. C-76210, decided April 6 1977. On the basis of the foregoing authorities, and in the absence of any assertion by appellant that the lineup procedure was impermissibly suggestive, we conclude that the trial court did not err in admitting the identification testimony. The first assignment of error is overruled.

Appellant's second assignment alleges error on the part of the trial court in overruling both his motion to quash the indictment and his challenge to the array of the grand jury.

The motion to quash was grounded upon two assertions: (1) the indictment was faulty on its face, and (2) appellant was entitled to three separate indictments since the offenses for which he was charged arose out of three different incidents and involved three different victims. We find both reasons to be without merit. A review of the

indictment reveals that it is proper in all respects. We note further that appellant's apprehension that he would be prejudiced by a single jury trial on all counts in the indictment was alleviated by the trial court's granting of his companion motion for three separate trials.

As for the alternate prong of his second assignment, appellant failed to produce any evidence to support his challenge to the grand jury array. Since no error affirmatively appears on the face of the record, the trial court's overruling of the challenge must therefore be presumed correct and in accordance with law. *Beach* v. *Sweeney* (1958), 167 Ohio St. 477. Accord, *Cincinnati* v. *Duhart* (1974), 41 Ohio App. 2d 127.

Appellant also contends in his brief that the motion to quash and the challenge to the array, both of which were filed *pro se,* were sufficient to raise an issue as to the constitutionality of Crim. R. 6(A). The last sentence of that rule states:

"The grand jury shall consist of nine members, including the foreman, plus not more than five alternates."

Appellant, who was indicted by a nine person grand jury, points out that this rule is in direct conflict with R. C. 2939.20, which provides that "[a]t least *twelve* of the grand jurors must concur in the finding of an indictment." (Emphasis added.)

Crim. R. 6(A) was promulgated by the Supreme Court of this state pursuant to authority derived from Section 5(B), Article IV of the Constitution of Ohio, which provides in pertinent part:

"The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

The question we confront, then, is whether the reference to twelve grand jurors in R. C. 2939.20 constitutes a "substantive right" which may not be superseded by Crim. R. 6(A).

A similar issue was presented in *Cincinnati* v. *Lawson,* unreported, First Appellate District, No. C-75154, decided

April 5, 1976, where this court decided that the provision in Crim. R. 23(B) for juries of eight persons in misdemeanor cases was valid and constitutional despite several state statutes which adverted to juries of twelve persons. Citing the precedent established in *Williams* v. *Florida* (1970), 399 U. S. 78, we there took the position that while the right to trial by jury is substantive and must be kept inviolate, the number of jurors is constitutionally flexible and a matter which may be controlled by the Ohio Supreme Court under its constitutional rule-making power. The same reasoning applies here. If the number of jurors required for the determination of guilt or innocence is not substantive, certainly then neither is the number required in a grand jury which only determines probable cause for an indictment. The number of grand jurors not being substantive, to the extent that R. C. 2939.20 is in conflict with Crim. R. 6(A), it is of no further force or effect. Appellant's second assignment of error is overruled.

Appellant's third assignment asserts that the trial court erred in overruling his motion for a mistrial based upon an improper jury contact by a sheriff's deputy. The following colloquy between defense counsel and the trial court constitutes the only reference in the record concerning the incident.(The following occurred at the side of the bench.)

"The Court: Yes, sir.

"Mr. Blackmore: My client has brought to my attention that as he was being handcuffed or unhandcuffed in the courtroom, that act was witnessed by one or more members of the jury.

"He additionally told me that he saw a member of the sheriff's department, one of the deputies, talking with a member of the jury.

"The Court: Which member of the jury was it?

"Mr. Blackmore: I will ask him. No. 3, and the officer's name was Baily.

"The Court: His name is Day, isn't it?

"Mr. Blackmore: No. 3 juror, but the officer's name, the deputy's name, is Baily.

"The Court: Is he in the courtroom?

"Mr. Blackmore: No, he isn't.

"The Court: And you would move the court with respect to those two grounds for a mistrial?

"Mr. Blackmore: Yes, Your Honor.

"The Court: Motion for mistrial will be denied. Note exceptions in behalf of counsel for the defendant."
(The discussion at the bench was concluded.)

This assignment presents a vexatious problem, one which was compounded in no small degree by the trial court's cursory treatment of the averment raised. An unexplained conversation between a juror and a third party, regardless of how innocent it may appear to the casual observer, is always a matter of grave concern to reviewing courts since it invites doubts as to the impartiality of the jury's deliberations. When confronted with this situation, courts have consistently applied the rule announced in *Remmer* v. *United States* (1954), 347 U. S. 227, 229;

"In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." (Citations omitted.)

Although the *Remmer* case serves as a useful guidepost for our inquiry here, the rule quoted above was fashioned in response to a factual setting that was different from that before us. In *Remmer*, the petitioner learned after the jury returned its verdict that an unnamed person had communicated with a certain juror during the trial. The juror, who later became the jury foreman, was told that he could profit by returning a verdict favorable to the petitioner. When the incident was reported to the trial judge, the judge informed the prosecuting attorneys and requested the Federal Bureau of Investigation to make an investigation and report. The FBI report was then considered alone

by the judge and prosecutors, who concluded that the remark to the juror had been made in jest. Petitioner and his counsel were not aware of any of these events until they read about them in a newspaper account following the verdict. Upon these facts the Supreme Court vacated the guilty verdict and remanded the case to the lower court, admonishing that "[t]he trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer, supra,* at 229-230.

Had the trial court heeded the above advice in the instant case, any doubts about Deputy Baily's isolated contact with juror Day in all likelihood would have been laid to rest. Since neither a hearing nor even a limited examination of Day or Baily was conducted as to the substance of the communication, the issue presented is whether *Remmer's* rule of presumptive prejudice is applicable here. We conclude that it is not.

The precise holding in *Remmer* was phrased thusly:

"In a criminal case any private communication, contact, or tampering, directly or indirectly, with a juror during a trial *about the matter pending before the jury* is * * * deemed presumptively prejudicial * * *." (Emphasis added.)

On the record before us there is nothing indicating that the conversation between Day and Baily related to anything involved in the trial. Thus, while we regret the trial court's failure to investigate the incident more fully, the principle enunciated in *Remmer* applies only where the communication is "about the matter pending before the jury." Here appellant has not even made a bare allegation that the conversation concerned matters before the court or that Deputy Baily had any suspect connection with the case. Moreover, despite the trial court's perfunctory response to the matter, the responsibility devolved upon defense counsel to attempt to discover the substance of the exchange or to request the court to do so. Neglect of this opportunity might itself be reason

enough to deny relief in the absence of any showing of actual prejudice. *United States* v. *Gersh* (C. A. 2, 1964), 328 F. 2d 460, 464, *certiorari* denied *sub nom. Mugnola* v. *United States* (1964), 377 U. S. 992. A final factor we have weighed is the general presumption that the jurors, including juror Day, were true to their oaths of impartiality and conscientiously observed the trial court's firm instruction not to discuss the case with anyone and to inform it of any attempts by outsiders to do so. See *Caviness* v. *United States* (C. A. 9, 1951), 187 F. 2d 719, 723 and *Baker* v. *Hudspeth* (C. A. 10, 1942), 129 F. 2d 779, 782. Appellant's third assignment of error is overruled.

Appellant's fourth assignment states:

"The Court erred in overruling defendant's motion for mistrial based upon the bailiff's closing the door to the jury room while the bailiff was therein with the jury for deliberations. His presence, therefore, was unlawful."

Appellant's fourth assignment is founded upon mere speculation. There is not the slightest bit of evidence in the record to suggest that the bailiff was present during jury deliberations or that his supervision of the jurors was in any way irregular. The assignment is overruled.

Appellant's fifth assignment asserts that he was prejudiced when the deputies exposed him to the jury in handcuffs and therefore was denied a fair trial as guaranteed by the Sixth Amendment. As in the previous assignment, the record is devoid of evidence to support appellant's allegation. There is no proof that any jury members saw appellant in handcuffs. In any event, the determination of whether the jury is permitted to view a defendant in handcuffs is a matter within the sound discretion of the trial court. *State* v. *Cron* (1967), 14 Ohio App. 2d 76. Although in the interest of a fair trial it is desirable that, where possible, a defendant not be in handcuffs, we cannot conclude from this alleged momentary slip that the trial court abused its discretion in this regard.

Appellant's sixth assignment states:

"Defendant was denied his right to compulsory process for obtaining witnesses in his behalf when the defend-

ant's motion for assignment of a urologist to prove that he was incapable of committing the act of rape as alleged by the alleged victim." (*Sic.*)

The record discloses that the trial court granted appellant's motion for "Appointment of Medical Doctors (Physicians) and a Psychiatrist." In connection therewith, the court's entry states as follows:

"* * * [T]he Court, being fully advised, is of the opinion that a limited physical examination and a psychiatric examination are appropriate to assist the defendant in the preparation of the defense herein.

"It is, therefore, the Court's order that defendant be examined by the Court Clinic, Central Psychiatric Clinic, and the said Court Clinic is hereby appointed for that purpose. Said Clinic shall, if it deems necessary or advisable, secure the services of a urologist to participate in the examination.

"It is the further order of the Court that the said Court Clinic, upon the completion of such examination, shall report, in writing, to the Court, to counsel for the defendant, Robert Blackmore, and to the Prosecuting Attorney, William Whalen, as to the facts found and the interpretation thereof, specifically any conclusions as to the physical/mental/emotional capability of the defendant to engage in sexual conduct, that is, intercourse."

Appellant has not cited, nor has this court found, any authority to support the proposition than an indigent criminal defendant is entitled to have a urologist provided at state expense. It is apparent from the record here that the court did everything possible to assure appellant a fair trial. The sixth assignment is overruled.

Appellant asserts as his seventh assignment of error that the jury's guilty verdict is not supported by the evidence and is contrary to law. On the contrary, the record contains ample evidence of probative value to support the jury's conclusion that appellant was guilty of the offenses of rape and felonious assault.

The eighth and last error assigned in case No. C-76660 is that the trial court committed prejudicial error in in-

structing the jury, without appellant's request, that it was not necessary that appellant take the witness stand in his own defense; that appellant had a constitutional right not to testify; and that the fact that appellant did not testify must not be considered by the jury for any purpose. Appellant challenges this instruction on the ground that the instruction itself called attention to his failure to testify and may have caused the jurors "* * * to consider certain influences which would not otherwise have entered their minds." Citing several out-of-state decisions as authority, appellant urges us to embrace a rule permitting an accused himself to decide whether his failure to testify should be mentioned to the jury. We decline to do so.

The current law in Ohio covering the issue raised by appellant is succinctly expressed in paragraph 3 of the syllabus of *State* v. *Nelson* (1973), 36 Ohio St. 2d 79:

"In a criminal case, it is discretionary with the trial court whether to charge on the defendant's right to elect not to testify."

Even if we were disposed to adopt appellant's proposed rule of law, we would not do so in the absence of a specific request by defense counsel, addressed to the court prior to its instructions to the jury, not to charge on a defendant's failure to testify. See *Mosby* v. *State* (1969), 246 Ark. 963, 440 S. W. 2d 230; but *cf. State* v. *Rosen* (1968), 280 Minn. 550, 158 N. W. 2d 202. In the instant case, appellant's counsel did not request the trial court to refrain from giving the instruction and did not object after it had been given. Any error relating thereto was therefore waived. Crim. R. 30; *State* v. *Lane* (1976), 49 Ohio St. 2d 77.

We turn now to case No. C-76796 and appellant's seven assignments of error thereunder. The first assignment alleges that the trial court erred in overruling his motion for discharge because his case was not tried within the 90-day time period mandated by R. C. 2945.71(C)(2) and (D). Appellant's trial on rape and felonious assault in case No. C-76660, counts I and IV of the indictment respectively, commenced 85 days after his arrest. Upon his

conviction, the trial court, pursuant to the requirement in R. C. 2947.25, referred appellant to Lima State Hospital for psychiatric evaluation. Resultantly, his second trial on count III of the indictment involving the separate felonious assault charge did not begin until 204 days after the arrest. While conceding that the period of confinement in Lima tolled the running of R. C. 2945.71, appellant contends that because he was held in the county jail for eight days between the commitment order and his actual transfer to Lima, the state was under a mandatory duty during this interval to bring him to trial on count III. We disagree.

The delay of the second trial initially was attributable to appellant's own request for separate trials and is therefore excusable under R. C. 2945.72(E). *State* v. *Smith,* unreported, First Appellate District, No. C-76135, decided June 22, 1977. The fact that eight days elapsed between the commitment order and appellant's transfer to Lima State does not alter that result. We recently considered an analogous situation in *State* v. *Dunn,* unreported, First Appellate District No. 328, rendered August 24, 1977, involving a 48-day period during which a defendant languished in Lima State because the hospital authorities delayed submitting their report. Relying in part on divisions (E) and (G) of R. C. 2945.72,[1] we there determined that the delay was neither excessive nor prejudicial. See also *State* v. *Walker* (1976), 46 Ohio St. 2d 157. We reach the same conclusion in the instant case and accordingly overrule appellant's first assignment.

Appellant's second assignment is a restatement of the error asserted in the first assignment in Case No. 76660,

---

[1]"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following: * * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused; * * *

"(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order; * * *."

*i. e.,* that the trial court erred in overruling his motion to suppress evidence illegally seized from his automobile and to suppress identification testimony based upon an illegal lineup. We overrule it for the same reasons set out in our previous discussion of these issues.

In his third assignment, appellant alleges that the trial court erred in permitting him to be tried in prison garb against his objection. The record discloses that appellant had ample opportunity to arrange the procurement of the type of attire he wished to wear during his trial. His failure to do so cannot be held against the state. As stated in *State* v. *Moon* (1975), 44 Ohio App. 2d 275, 282:

"Unlike the *Miranda* rule, there is no recognized constitutional duty to read to a defendant his dress rights for trial. This must be left to his own and to his counsel's choice as a part of trial preparation."

We conclude that the trial court did not abuse its discretion in overruling appellant's objection. The third assignment is therefore overruled.

In his fourth assignment, appellant contends that the court's sentence of five to fifteen years consecutive to his sentences of seven to twenty-five years and five to fifteen years in Case No C-76660 was in violation of R. C. 2929.41(E) (2), which provides:

"(E) Consecutive terms of imprisonment imposed shall not exceed: * * *

"(2) An aggregate minimum term of fifteen years, when the consecutive terms imposed are for felonies other than aggravated murder or murder; * * *."

This presents the issue whether, when the consecutive sentence is imposed by a different judge after a separate trial, he is limited by the aggregate minimum of fifteen years provided in the above-quoted section. For three reasons we hold that a judge is so bound.

First, the statute reads: "Consecutive terms of imprisonment imposed shall not exceed * * *." It does not state "consecutive terms of imprisonment imposed at any one time or by any one judge." The subject is "consecutive terms" so, if a court is imposing a consecutive term, the limitation of the aggregate minimum must be binding.

See *State* v. *Davis,* unreported, First Appellate District, No. C-75536, decided September 7, 1976, where we held to the same effect on facts substantially similar to these here presented.

Secondly, the legislature has indicated in R. C. 2929.-41(A) a presumption in favor of concurrent sentences.

Thirdly, R. C. 2901.04 provides, in part:

"(A) Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

If it be argued that there is any ambiguity in R. C. 2929.41, under R. C. 2901.04 it must be resolved against the state and in favor of the accused.

In light of the foregoing, we conclude that the trial court erred in sentencing appellant to five to fifteen years consecutive to the previous sentences imposed in Case No. C-76660. Accordingly, the trial court's judgment must be modified so that the aggregate minimum term for all three sentences imposed is limited to fifteen years, in accordance with R. C. 2929.41(E)(2).

We have considered appellant's fifth assignment of error, asserting that the jury's verdict was not supported by sufficient evidence and was contrary to law, and find it without merit. There is in the record substantial and credible evidence of probative value to sustain each element of the felonious assault charge.

We have also reviewed appellant's sixth and seventh assignments of error, relating to the trial court's failure to remove himself from the case and his commission of an isolated and minor verbal miscue in instructing the jury,[2] and find them without merit.

*Judgment affirmed.*

PALMER, P. J., and KEEFE, J., concur.

---

[2]In instructing on the state's obligation to prove all the elements of the offense charged, the trial court inadvertantly used the phrase "aggravated robbery" instead of "felonious assault." The record shows that the court at all other times in the course of the instructions referred to the correct offense of felonious assault and that he carefully corrected the error when it was brought to his attention moments later.