BARKER, APPELLEE, *v.*
THE STATE OF OHIO ET AL., APPELLANTS.

[Cite as Barker v. State (1980), 62 Ohio St. 2d 35.]

(No. 79-436—Decided April 2, 1980.)

36

*Messrs. Gray, Luria & Belkin, Mr. Alvin L. Gray* and *Mr. Keith E. Belkin,* for appellee.

*Mr. William D. Lentz,* assistant prosecuting attorney, for appellants.

HERBERT, J. A threshold question presented by this cause is whether the provisions of R. C. 2953.31 *et seq.,*[2] which

---

[2] R. C. 2953.31 provides in pertinent part:

"As used in sections 2953.31 to 2953.36 of the Revised Code, 'first offender' means anyone who has once been convicted of an offence in this state or any other jurisdiction.***"

empower sentencing courts of this state to expunge the record of conviction of first offenders occurring in "another jurisdiction," unconstitutionally deny judicial proceedings of other states full faith and credit within the meaning of the Constitution of the United States.

Section 1 of Article IV of the Constitution of the United States, in relevant part, states that "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other State." Congress, pursuant to the enabling clause of Section 1 of Article IV,[3] by Act of May 26, 1790, c. 11 (1 Stat. 122, Section 687, Title 28, U.S. Code, revised by Section 1738, Title 28, U.S. Code [1948]), set forth the manner by which this constitutional mandate is to be implemented, providing that judgments " * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such state * * * from which they are taken." However, the United States Supreme Court has held that this constitutionally in-

---

R. C. 2953.32, effective November 1, 1977, provided:

"(A) A first offender may apply to the sentencing court if convicted in the state or to a court of common pleas if convicted in another jurisdiction for the expungement of the record of his conviction, at the expiration of three years if convicted of a felony, or at the expiration of one year if convicted of a misdemeanor, after his final discharge.

"(B) Upon the filing of such application, the court shall set a date for hearing and * * * shall direct * * * the department of probation *of the county where the applicant resides* to make such inquiries and written reports as the court requires concerning the applicant.

"(C) If the court finds that the applicant is a first offender, that there is no criminal proceeding against him, that his rehabilitation has been attained to the satisfaction of the court, and that the expungement of the record of his conviction is consistent with the public interest, the court shall order all official records pertaining to the case sealed and all index references deleted. The proceedings in the case shall be deemed not to have occurred and the conviction of the person subject thereof shall be expunged * * * ." (Emphasis added.)

R. C. 2953.33(A), effective January 1, 1974, provided:

"An order of expungement of the record of conviction restores the person subject thereof to all rights and privileges not otherwise restored by termination of sentence or probation or by final release on parole."

[3] Section 1 of Article IV of the Constitution of the United States empowers the Congress of the United States to enact legislation effectuating the Full Faith and Credit Clause. That Article states:

" * * * And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

spired command is not an all-embracing one, in that a rigid and inflexible implementation may fail to accommodate important and fundamental interests of sovereign states which are paramount to the unifying principle upon which the Full Faith and Credit Clause was predicated. See *Huntington* v. *Attrill* (1892), 146 U.S. 657; *Alaska Packers Assn.* v. *Industrial Accident Comm.* (1935), 294 U.S. 532; *Milwaukee County* v. *M. E. White Co.* (1935), 296 U.S. 268, 274; *Williams* v. *North Carolina* (1942), 317 U.S. 287; *Magnolia Petroleum Co.* v. *Hunt* (1943), 320 U.S. 430; *May* v. *Anderson* (1953), 345 U.S. 528; *Nevada* v. *Hall* (1979), 440 U.S. 410.

Although relaxation of the strictness of full faith and credit has been rare, an early exception was made respecting sister state judgments which were penal in the "international sense," such as those resulting from state criminal convictions applying the *lex loci delictus.* See *The Antelope* (1825), 23 U.S. 66 (10 Wheat.), 122, 123; *Wisconsin* v. *Pelican Ins. Co.* (1888), 127 U.S. 265; *Huntington* v. *Attrill, supra; Converse* v. *Hamilton* (1912), 224 U.S. 243, 260; *Bradford Electric Co.* v. *Clapper* (1932), 286 U.S. 145, 160; *Nelson* v. *George* (1970), 399 U.S. 224, 229.

In the vintage case of *Wisconsin* v. *Pelican Ins. Co., supra,* the court addressed as a corollary matter the breadth of the Full Faith and Credit Clause with respect to the enforcement of the penal judgments of one state by another. Quoting Chief Justice Marshall in *The Antelope, supra,* the *Wisconsin* court, at page 290, reasoned that it is an "incontrovertible maxim" that "* * *[t]he courts of no country execute the penal laws of another." The court, in expounding upon this axiom in relation to the provisions of the Full Faith and Credit Clause, held at pages 290-291:

"The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties. If this were not so, all that would be necessary to give ubiquitous effect to a penal law would be to put the claim for a penalty into the shape of a judgment. Wharton's Conflict of Laws, § 833; Westlake's

International Law (1st ed.), § 388; Piggott on Foreign Judgments, 209, 210.

"* * * 'The proper place for punishment is where the crime is committed, and no society takes concern in any crime but what is hurtful to itself* * *because no court reckons itself bound to punish, or to concur in punishing, any delict committed *extra territorium.*' 2 Kames on Equity (3d ed.) 326, 366; Story's, Conflict of Laws, 600, 622.

"* * *

"The application of the rule to the courts of the several States and of the United States is not affected by the provisions of the Constitution and of the act of Congress, by which the judgments of the courts of any State are to have such faith and credit given to them in every court within the United States as they have by law or usage in the State in which they were rendered. Constitution, art. 4, sect. 1, Act of May 26, 1790, c. 11, 1 Stat. 122; Rev. Stat. § 905."[4]

It is our conclusion that under the provisions of R. C. 2953.31 *et seq.,* courts of this state may grant intrastate expungement for a judgment of conviction occurring in a sister

---

[4] In *Huntington* v. *Attrill* (1892), 146 U.S. 657, it was indicated that when a court was called upon to enforce an extra-territorial judgment, it should determine for itself whether the statute upon which the judgment was founded falls within the ambit of Section 1 of Article IV. That court reasoned at pages 673-674:

"The question whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act."

Particularly relevant to the cause at bar is the *Huntington* court's statement, at page 673, with regard to extra-territorial enforcement of the disabilities associated with criminal convictions under the Full Faith and Credit Clause:

"* * *[P]ersonal disabilities imposed by the law of a State, as an incident or consequence of a judicial sentence or decree, by way of punishment of an offender, and not for the benefit of any other person—such as attainder, or infamy, or incompetency of a convict to testify, or disqualification of the guilty party to a cause of divorce for adultery to marry again—are doubtless strictly penal, and therefore have no extra-territorial operation. Story on Conflict of Laws, §§ 91, 92; Dicey on Domicil, 162; *Folliott* v. *Ogden,* 1 H. Bl. 123, and 3 T. R. 726; *Logan* v. *United States,* 144 U.S. 263, 303; *Dickson* v. *Dickson,* 1 Yerger, 110; *Ponsford* v. *Johnson,* 2 Blatchford, 15; *Commonwealth* v. *Lane,* 113 Mass. 458, 471; *Van Voorhis* v. *Brintnall,* 86 N.Y. 18, 28, 29."

This is not to say, however, that such disabilities may not be recognized if they are consistent with the interests of this state. See, *e.g.,* R. C. 2961.01.

state, as Section 1 of Article IV of the Constitution of the United States does not place an obligation upon state courts to accord full faith and credit to extra-territorial state criminal judgments.[5]

As a secondary challenge to appellee's application for expungement, appellants contend in effect that the Full Faith and Credit Clause requires the *lex loci delictus* to be applied in order to determine whether appellee is entitled to the expungement of his criminal record, which in this cause is the law of West Virginia. Insofar as the statutes of West Virginia do not authorize this type of an expungement, appellants argue that the expungement in Ohio would unconstitutionally deprive the West Virginia expungement statutes of the full faith and credit in Ohio guaranteed by Section 1 of Article IV of the Constitution of the United States.

In construing the breadth of the Full Faith and Credit Clause, and *a fortiori* the derivative Act of Congress, the United States Supreme Court has indicated that a foreign state statute is a "public act" within the meaning of Section 1 of Article IV. *Bradford Electric Light Co.* v. *Clapper, supra* (286 U.S. 145, 154-155).[6] Nonetheless, it has been emphasized that the degree to which a statute of a sister state must be accorded full faith and credit differs from the constitutional recognition required of out-of-state judgments submitted for enforcement in a foreign jurisdiction. *Magnolia Petroleum Co.* v. *Hunt, supra* (320 U.S. 430); *Williams* v. *North Carolina, supra* (317 U.S. 287, 294-295). Since each state has both the constitutional authority to enact its own laws, and the corollary right to apply them with respect to persons or events within its borders in a manner consistent with the limits of due process,[7] the Full Faith and Credit Clause does not ordinarily

---

[5] Cf., Berge, Criminal Jurisdiction and the Territorial Principle, 30 Mich. L. Rev. 238; accord, Leflar, Extrastate Enforcement of Penal and Governmental Claims, 46 Harv. L. Rev. 193.

[6] See, also, Jackson, Full Faith and Credit—The Lawyer's Clause of the Constitution, 45 Columbia L. Rev. 1, 12.

[7] The scope of the legislative enactments in question, and the facts of this cause, demonstrate that this state has a sufficient interest in this proceeding to apply its own statutory enactments without running afoul of the mandates of the Due Process Clause of the Fourteenth Amendment. (See fn. 1.)

compel the displacement of local law with the conflicting law of another state, notwithstanding the undeniable applicability of the conflicting law in the other jurisdiction with reference to the same persons or events. *Magnolia Petroleum Co.* v. *Hunt, supra; Pacific Employers Ins. Co.* v. *Industrial Accident Comm.* (1939), 306 U.S. 493. Justice Stone, in *Alaska Packers Assn.* v. *Industrial Accident Comm., supra* (294 U.S. 532), at pages 547-548, set forth the standard upon which resolution of these matters turns:

"***Prima facie* every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum.***"

See, also, *Pacific Employers Ins. Co., supra; Nevada* v. *Hall, supra* (440 U.S. 410); cf., *Schiltz* v. *Meyer* (1972), 29 Ohio St. 2d 169, 280 N.E. 2d 653.

In our view, a similar conclusion is warranted in the instant cause. The General Assembly has declared with the enactment of R. C. 2953.31 *et seq.* that this state is to provide remedial relief to qualified offenders in order to facilitate the prompt transition of these individuals into meaningful and productive roles.[8] To require Ohio to subordinate its announced policy, however wise or unwise it may be, for that of the *lex loci delictus,* would be repugnant to this state's interests with respect to its residents. No countervailing reasons have been presented which convince us that West Virginia's interests are paramount herein.

Appellants' final challenge to these statutory provisions stems from a literal reading of R. C. 2953.32(A). Appellants contend that upon a finding that appellee is entitled to the expungement of an offense occurring in West Virginia, the Court of Common Pleas would be required to order authorities in West Virginia to expunge the records of conviction in that

---

[8] R. C. 2953.33(B), effective January 1, 1974, provided:

"In any application for employment, license, or other right or privilege, any appearance as a witness, or any other inquiry***a person may be questioned only with respect to convictions not expunged***."

state. Because Ohio is constitutionally unable to force West Virginia to expunge appellee's records there, appellants contend that the commands of R. C. 2953.31 *et seq.*, pertaining to the expungement of records in jurisdictions other than Ohio, are without constitutional support.

A review of the pertinent statutory provisions demonstrates that the expungement language scheme is indeed imprecise with regard to the manner in which the courts are to perform their statutory duty.[9] It is not, however, the function of this court to rewrite the enactment. Instead, it must be presumed that the General Assembly intended for these statutes to comport with the Constitution.[10] Furthermore, these remedial provisions are to be liberally construed to promote their purposes. R. C. 1.11;[11] see *State* v. *Sinito* (1975), 43 Ohio St. 2d 98, 101, 330 N.E. 2d 896. Accordingly, we conclude that the provisions of R. C. 2953.31 *et seq.*, which refer to the expungement of a record of conviction, require only the expungement of those records located within the territorial boundaries of this state.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, DOWD, SWEENEY, LOCHER and HOLMES, JJ., concur.

DOWD, J., of the Fifth Appellate District, sitting for P. BROWN, J.

---

[9] See, Comments, Expungement in Ohio: Assimilation into Society for the Former Criminal, 8 Akron L. Rev. 480.

[10] R. C. 1.47, provides:

"In enacting a statute, it is presumed that:

"(A) Compliance with the constitutions of the state and of the United States is intended;

"***

"(C) A just and reasonable result is intended;

"(D) A result feasible of execution is intended."

[11] R. C. 1.11, dealing with the liberal construction of remedial laws, provides in applicable part:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. The rule of the common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws***."