THE STATE, EX REL. CORRIGAN, PROS. ATTY., *v.* BARNES.

(No. 44926—Decided April 19, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, for relator.

*Messrs. Berkman, Gordon, Levy, Murray & Palda, Mr. Bernard A. Berkman, Mr. J. Michael Murray* and *Mr. Ira S. Goffman,* for respondent.

JACKSON, J. This is an original proceeding in quo warranto,[1] instituted by relator, John T. Corrigan, Prosecuting Attorney of Cuyahoga County, against respondent, John E. Barnes, a member of the City Council of Cleveland, Ohio. Relator contends that respondent is barred from holding public office within the state of Ohio, by reason of a federal felony conviction.

The respondent moved this court for judgment on the pleadings. In ruling upon this motion, the material allegations of the complaint and the reasonable inferences therefrom are assumed to be true; judgment may be rendered for the moving party only if it appears that such party is entitled to judgment as a matter of law. *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161, 165-166 [63 O.O.2d 262].

It is alleged in the complaint that on January 4, 1954, respondent Barnes was convicted in federal court of refusal to submit to induction into the armed forces of the United States, and that he was sentenced to federal prison. These factual allegations are admitted by the respondent. It is therefore appropriate for this court to dispose of this case by way of judgment on the pleadings, if it appears that respondent is entitled to judgment as a matter of law.

Under Ohio law in effect at the time of respondent's conviction, persons convicted of felonies in the state of Ohio, and persons who had been imprisoned in the penitentiary of any other state for crimes punishable by imprisonment in the penitentiary under the laws of Ohio, were disenfranchised, and were forbidden from holding any office of honor, trust, or profit. G.C. 13458-1 and 13458-2.[2]

The language of G.C. 13458-1 and 13458-2 did not make any reference to persons convicted of federal crimes, or to persons incarcerated in federal prisons. There is judicial and administrative authority for the proposition that such persons were not included within the ambit of these statutes. In 1950 the Ohio Attorney General stated:

"* * * There is no provision in Ohio law that would disfranchise a person convicted of a federal crime in a federal court. * * *" 1950 Ohio Atty. Gen. Opinions, No. 1499, at page 108.

The Court of Common Pleas of Putnam County, in 1962, held that a person who had been sentenced to a federal prison was entitled to vote in a local school board election:

"The federal parollee appeared at the voting place, asked the judges if he should vote, who, not being sure of the immediate answer, instructed him to vote and put his ballot in the disputed ballot envelope. This ballot was later ordered counted by the board of elections. Article V, Section 1 of the Ohio Constitution provides that every citizen of the United States of the age of twenty-one, who shall have been a resident of the state one year,

---

[1] A civil action in quo warranto may be brought against "* * * a person who * * * unlawfully holds or exercises a public office * * *." R.C. 2733.01(A). The Courts of Appeals and the Supreme Court have original jurisdiction in such actions. R.C. 2733.03.

[2] Former G.C. 13458-1 provided:

"A person convicted of a felony in this state, unless his conviction is reversed or annulled, shall be incompetent to be an elector or juror, or to hold an office of honor, trust or profit. The pardon of a convict shall effect a restoration of the rights and privileges so forfeited or they may be restored as otherwise provided by law, but a pardon shall not release a convict from the costs of his conviction, unless so ordered."

Former G.C. 13458-2 provided:

"A person who has been imprisoned in the penitentiary of any other state of the United States, under sentence for the commission of a crime punishable by the laws of this state by imprisonment in the penitentiary, is incompetent to be an elector or juror, or hold an office of honor, trust or profit within this state unless he has received a pardon from the Governor of the state in which he was imprisoned."

shall have the qualifications of an elector. Article V, Section 4, provides the General Assembly shall have power to exclude from the privilege of voting certain persons, including those convicted of a felony or infamous crime.

"Section 2961.01, Revised Code [former G.C. 13458-1], provides for disfranchisement of a person convicted of a felony in this State. Section 2961.02, Revised Code [former G.C. 13458-2], provides for disfranchisement of anyone who has been imprisoned in the penitentiary of any other state. There is no Statute relating to disfranchisement of those convicted of federal crimes, nor does the United States have a disfranchising statute. Therefore, under Article V, Section 1, the federal parollee was entitled to vote, the legislature not having enacted a statute disfranchising him." *In re Sugar Creek Local School District, Transfer* (1962), 90 Ohio Law Abs. 257, 262-263.

Effective January 1, 1974, R.C. 2961.02 (former G.C. 13458-2) was repealed (see 134 Ohio Laws, Part II, 1866, 2032-2034), and R.C. 2961.01 (former G.C. 13458-1) was amended (see 134 Ohio Laws, Part II, 1866, 2004), to cover persons convicted of felonies under federal law. The amended version, still in effect, provides in part as follows:

"A person convicted of a felony under the laws of this or any other state *or the United States,* unless his conviction is reversed or annulled, is incompetent to be an elector or juror, or to hold an office of honor, trust, or profit. * * *" (Emphasis added.)

Respondent contends that, as applied to him, R.C. 2961.01 as amended is unconstitutional, under the Constitutions of Ohio and the United States. Respondent specifically argues that amended R.C. 2961.01, if applied to him, is invalid because it is an *ex post facto* law, a retroactive law, and a law which is in conflict with the Home Rule provisions of the Ohio Constitution. Each of these issues is separately discussed below.

## I. Ex Post Facto Law

*Ex post facto* laws are prohibited by Section 10, Article I of the United States Constitution, which provides, in part: "No State shall * * * pass any * * * ex post facto Law * * *." The United States Supreme Court has defined an *ex post facto* law as follows:

" 'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*' " *Dobbert* v. *Florida* (1977), 432 U.S. 282, 292, quoting *Beazell* v. *Ohio* (1925), 269 U.S. 167, 169-170 (Stone, J.).

The issue presented in this case is whether a law which prohibits a person from holding public office, because of an illegal act committed prior to the enactment of the law, is an *ex post facto* law. This question was answered in the affirmative in 1867, by the United States Supreme Court, in the cases of *Cummings* v. *Missouri* (1867), 4 Wall. 277 (71 U.S.), 18 L. Ed. 356, and *Ex Parte Garland* (1867), 4 Wall. 333, 18 L. Ed. 366.

Following the close of hostilities in the Civil War, the state of Missouri adopted a new constitution, which forbade any citizen from holding public office, voting, serving as a juror, practicing law, or preaching any religion, until the citizen had taken an oath swearing that he had not taken arms against the United States, or expressed any sympathy with those engaged in the rebellion, or expressed any disaffection toward the government of the United States, or entered or left the state of Missouri for the purpose of evading enrollment in the military service of the United States. John Cummings, a Catholic priest, pursued his vocation and

refused to take this oath. He was convicted and fined, and his conviction was affirmed by the Supreme Court of Missouri. The Supreme Court of the United States vacated his conviction, on the ground that the Missouri constitutional provisions prescribing the oath were *ex post facto* laws.

The state of Missouri, like the state of Ohio in the case at bar, suggested to the court that the oath merely established qualifications for voting and for pursuing various callings, and should not be regarded as "punishment" for acts already committed. Justice Field, writing for a majority of the court, described the long history of deprivation of civil rights as a form of punishment, dating from statutes of William III and George I; he quoted the following selection from Blackstone's Commentaries:

" 'Some punishments,' says Blackstone, 'consist in exile or banishment, by abjuration of the realm or transportation; others in loss of liberty by perpetual or temporary imprisonment. Some extend to confiscation, by forfeiture of lands or movables, or both, or of the profits of lands for life; others induce a disability of holding offices or employments, being heirs, executors, and the like.' " (Footnote omitted.) 4 Wall., at 321, 18 L.Ed., at 362.

The Supreme Court came to the following conclusion:

"The theory upon which our political institutions rests is, that all men have certain inalienable rights — that among these are life, liberty, and the pursuit of happiness; and that in the pursuit of happiness all avocations, all honors, all positions, are alike open to every one, and that in the protection of all these rights all are equal before the law. Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined." 4 Wall., 321-322, 18 L. Ed., 362.

The Supreme Court found that the effect of the Missouri constitutional provisions was to punish persons who had committed certain legal and illegal acts prior to the adoption of the Constitution, and concluded that these provisions were *ex post facto* laws:

"Some of the acts at which the oath is directed constituted high offences at the time they were committed, to which, upon conviction, fine and imprisonment, or other heavy penalties, were attached. The clauses which provide a further penalty for these acts are also within the definition of an *ex post facto* law — 'they impose additional punishment to that prescribed when the act was committed.' " 4 Wall., 328, 18 L. Ed., 364.

In *Ex Parte Garland, supra,* decided the same day as *Cummings* v. *Missouri,* Justice Field struck down a federal statute which was very similar to the provisions of the Missouri constitution considered in *Cummings,* on the ground that the statute constituted an *ex post facto* law, a bill of attainder, and because it was in conflict with a presidential order pardoning Mr. Garland for his participation in the rebellion.

In two subsequent decisions, the Supreme Court has held that a state may enact statutes prohibiting a convicted felon from engaging in a particular trade or profession, and that retrospective application of such statutes does not violate the constitutional prohibition against *ex post facto* laws. *De Veau* v. *Braisted* (1960), 363 U.S. 144 (upholding law barring felons from holding office in Longshoremen's unions); and *Hawker* v. *New York* (1898), 170 U.S. 189 (upholding law barring convicted felons from practicing medicine). The test, as enunciated by the Supreme Court, is:

"* * * whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications, for a profession. * * *" *De Veau* v. *Braisted, supra,* at 160.

In *De Veau,* the law barring felons from union office was enacted as part of the New York Waterfront Commission Act, which the court described as "* * * a detailed scheme for governmental supervision of employment on the waterfront in the Port of New York. * * *" *De Veau* v. *Braisted, supra,* at 145. Criminal infiltration of unions representing longshoremen had been decried by the New York Crime Commission, whose report on the subject was submitted to the New York State Legislature. The court found that the primary purpose of the statute was not to punish felons, but to establish qualifications for union officers:

"* * * The proof is overwhelming that New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation of the waterfront, and for the effectuation of that scheme it became important whether individuals had previously been convicted of a felony." *Id.,* at 160.

In contrast, the Ohio statute under review is not contained in the section of the Revised Code which establishes qualifications for members of the legislative authority of municipalities, R.C. 731.02. R.C. 2961.01 is instead contained in the Criminal Code; the title of the statute is "Civil rights of convicted felons."[3]

The primary purpose and effect of this statute is to punish felony offenders by depriving them of certain civil rights. Since the legislative aim was primarily punishment for criminal acts rather than establishment of qualifications for a profession, the statute is subject to the prohibition against *ex post facto* laws.

It is the considered opinion of this Court of Appeals that R.C. 2961.01, as applied to persons convicted of felonies under federal law prior to January 1, 1974, is an *ex post facto* law.

## II. Retroactive Law

The Ohio Legislature is prohibited from enacting retroactive laws under Section 28, Article II of the Constitution, which provides: "The general assembly shall have no power to pass retroactive laws * * *."

For purposes of this lawsuit, the pertinent distinction between an *ex post facto* law and a retroactive one is that *ex post facto* laws include statutes which increase the *punishment* of a prior *criminal* act, whereas retroactive laws include statutes which " '* * * [attach] a new *disability* in respect to past *transactions* * * *' " (emphasis added), *State, ex rel. Michaels,* v. *Morse* (1956), 165 Ohio St. 599, 604 [60 O.O. 531]. Retroactive laws are therefore a larger category than *ex post facto* laws, and comprise statutes imposing "disabilities" as well as those imposing "punishments." The Ohio Supreme Court, by way of *obiter dictum,* recently noted that R.C. 2961.01 is an example of "* * * extra-territorial enforcement of the disabilities associated with criminal convictions * * *." *Barker* v. *State* (1980), 62 Ohio St. 2d 35, 39 [16 O.O.3d 22], at fn. 4.

There is no question but that the 1974 amendment to R.C. 2961.01, as interpreted by relator, would impose a new disability upon respondent as the result of his prior conduct, this disability being the deprivation of his right to hold public office. If the statute is applied with respect to acts which occurred prior to its effective date, it must be considered a retroactive law, and invalid under the Constitution of Ohio.

## III. Home Rule Provisions of Ohio Constitution

Respondent's final contention is that R.C. 2961.01 is an unconstitutional interference with the authority of the city of

---

[3] This court is cognizant that title, chapter, and section headings do not form any part of the Revised Code. R.C. 1.01. The physical location of a provision of the code is, however, evidence of the legislative purpose.

Cleveland to regulate matters of local self-government. Sections 3 and 7 of Article XVIII of the Ohio Constitution provide:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." (Section 3.)

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." (Section 7.)

The Ohio Supreme Court has given a broad interpretation to the power of municipalities to enact local legislation:

"* * * [M]unicipalities have the power to enact local legislation, as distinguished from matters of statewide concern without regard to general laws on the subject, except to the extent this power is limited by the Constitution itself.* * * " *State, ex rel. Kohl,* v. *Dunipace* (1978), 56 Ohio St. 2d 120, 121 [10 O.O.3d 309].

Respondent contends that the qualifications of a person to hold the office of councilman in the city of Cleveland is a matter of purely local concern, and is governed solely by the provisions of the Cleveland City Charter.[4] Respondent relies upon *State, ex rel. Bindas,* v. *Andrish* (1956), 165 Ohio St. 441 [60 O.O. 92]. The complete syllabus of that opinion is as follows:

"1. Although the Ohio Constitution limits the authority of municipalities to adopt and enforce 'police, sanitary and other similar regulations' to such regulations 'as are not in conflict with general laws,' there is no such limitation with respect to the 'authority to exercise all [other] powers of local self-government.'

"2. A municipality can, by its charter and in the exercise of powers of local self-government, determine upon qualifications for its councilmen which may be different from those provided by statute.

"3. Where the charter of a city specifies certain qualifications for a councilman, the requirements of Section 731.02, Revised Code, as to qualifications of a member of the legislative authority of a city, will not apply in the absence of their adoption by other provisions of the charter."

Unlike the statute under consideration in *Bindas,* the state statute before this court does not solely establish qualifications for the office of city councilman. This court is persuaded that R.C. 2961.01 does not involve a subject of purely local concern, but one of statewide concern, namely, the punishment of felony offenders. Municipalities have no power to punish felons; violation of a municipal ordinance may constitute no more than a misdemeanor. R.C. 715.67. Only the legislature of the state of Ohio has the power to impose a further penalty upon felony offenders. R.C. 2961.01 is therefore not in conflict with the Home Rule provisions of the Ohio Constitution.

---

[4] The relevant portion of the Cleveland City Charter, Chapter 5, Section 26, provides in part:

"Members of the Council shall be residents of the City and have the qualifications of electors therein. A member of the Council, who at the time of his election, was a resident of the ward which he represents shall forfeit his office if he removes therefrom. Members of Council shall not hold any other public office or employment except that of notary public or member of the State militia, and shall not be interested in the profits or emoluments of any contract job, work or service of the Municipality. Any member who shall cease to possess any of the qualifications herein required shall forthwith forfeit his office, and any such contract in which any member is or may become interested may be declared void by the Council. * * *"

## IV. Conclusion

The state of Ohio has chosen to deprive felons of certain civil rights, among them the right to hold public office. That this is the prerogative of the state we have no doubt. The holding of this court is simply that the legislature may not apply this statute to persons who committed felonies under federal law prior to the effective date of the 1974 amendment of the statute.

Accordingly, respondent's motion for judgment on the pleadings is granted, and relator's complaint in quo warranto is dismissed with prejudice.

*Judgment accordingly.*

PARRINO and MARKUS, JJ., concur.

MARKUS, J. concurring. In my view, the key questions presented here are: (a) whether R.C. 2961.01 imposes punishment for criminal conduct rather than establishing qualifications for public office, and (b) whether the version of R.C. 2961.01 in effect in 1954 applied to Ohio federal court convictions. If R.C. 2961.01 is penal in nature, its terms cannot be applied retroactively to impose punishment for conduct preceding its effective date of January 1, 1974, for the reasons stated by the majority opinion. Further, if R.C. 2961.01 is penal and the version in effect in 1954 did not impose disqualification from public office as punishment for an Ohio federal court conviction, then this action must be dismissed.

An examination of the history of R.C. 2961.01 may be helpful in determining whether it was intended by the legislature as a punishment for criminal conduct or a standard for selecting public officials. The first statutory reference to this subject can be found in *"AN ACT for the punishment of crimes,"* 22 Ohio Laws 158 (February 26, 1824). Section 37 of that early statute provided (22 Ohio Laws 158, at 166):

"That any person who shall be convicted of any offence by this act made criminal, shall be forever thereafter incapable of giving testimony, being a juror or holding any office of honor, profit or trust within this state."

In its full compass, that 1824 statute defined criminal offenses and established applicable punishments. Except for the above-quoted language, this statute made no reference whatever to qualifications of an elector or officeholder.

The same pattern applied in subsequent disfranchisement or disqualification legislation. From 1824 to the present, these statutes have consistently included the disfranchisement of electors and the disqualification of officeholders as specific sanctions for criminal conduct, as part of the applicable criminal laws. After the 1824 statute, quoted earlier, changes were made in 1831 to remove from the disfranchisement and disqualification provision convictions which are reversed, annulled, or pardoned, and convictions for manslaughter or dueling. "AN ACT for the punishment of crimes," Section 39, 29 Ohio Laws 136, at 143 (March 3, 1831).

In 1835, no change was made in the disfranchisement and disqualification provisions. An Act "Providing for the Punishment of Crimes," Section 41, 33 Ohio Laws 33, at 41 (March 7, 1835). In 1842, the 1835 Act was amended to add disfranchisement and disqualification for persons who were convicted and "* * * actually imprisoned in the penitentiary of any other state or territory," if the offense was punishable in Ohio by penitentiary imprisonment. An Act "To amend the act entitled 'An act for the punishment of crimes,' passed March 7, 1835," Section 1, 40 Ohio Laws 30 (March 2, 1842).

Although earlier criminal statutes described offenses subject to extended penitentiary punishment as "misdemeanors," the 1877 law defined felonies as "[o]ffenses which may be punished by death, or by imprisonment in the penitentiary * * *" (Section 2, *infra*) and

modified the disqualification and disfranchisement provisions to relate solely to felony conduct. An Act "To amend, revise and consolidate the statutes relating to crimes and offenses * * * [and] to be known as title one, crimes and offenses, * * * " Sections 2, 4, and 5, 74 Ohio Laws 240, at 241-42 (May 5, 1877). Further, the 1877 statute eliminated the exceptions from disqualification and disfranchisement for manslaughter and dueling. Section 4, 74 Ohio Laws 240, at 241-42.

In 1881, that statutory provision for disqualification and disfranchisement was modified to allow restoration of a convict's forfeited rights and privileges under certain circumstances. An Act "To amend section[s] * * * of the revised statutes of Ohio," Section 6797, 78 Ohio Laws 89, at 90. When the entire Ohio code was restructured as the 1929 General Code, that statute carried the same provisions for disqualification and disfranchisement as the 1877 law with the 1881 supplementation. "AN ACT To revise and codify the Code of Criminal Procedure of Ohio * * *," G.C. 13458-1 and 13458-2, 113 Ohio Laws 123, at 211. The 1929 statute identified these provisions as General Code Sections.

In 1953, the Ohio legislature created the Revised Code, which made only minor language changes in the preceding criminal code provisions for disqualification and disfranchisement of convicts. "Am. House Bill 1," R.C. 2961.01 and 2961.02 (February 12, 1953). Those 1953 provisions contained the applicable statutory language in 1954, when respondent was convicted by a federal court in Ohio:

"2961.01 [13458-1]. Disfranchisement of convict.

"A person convicted of a felony in this state, unless his conviction is reversed or annulled, is incompetent to be an elector or juror, or to hold an office of honor, trust, or profit. The pardon of a convict restores the rights and privileges so forfeited, but a pardon shall not release a convict from the costs of his conviction, unless so specified."

"2961.02 [13458-2]. Convict of another state.

"A person who has been imprisoned in the penitentiary of any other state of the United States, under sentence for the commission of a crime punishable under the laws of this state by imprisonment in the penitentiary, is incompetent to be an elector or juror, or to hold an office of honor, trust, or profit within this state unless he has received a pardon from the governor of the state in which he was imprisoned."

Effective January 1, 1974, the criminal code was again amended. R.C. 2961.01 was redrafted to incorporate the two previous provisions, and R.C. 2961.02 was repealed. An Act "To amend sections * * * of the Revised Code to revise the criminal law of Ohio," R.C. 2961.01, 134 Ohio Laws, Part II, 1866, at 2004 (Am. Sub. H.B. No. 511, passed December 14, 1972). The resulting statutory language, which remains in effect today, is relied upon by relator as the basis for disqualifying respondent from holding public office:

"2961.01. Civil rights of convicted felons.

"A person convicted of a felony under the laws of this or any other state or the United States, unless his conviction is reversed or annulled, is incompetent to be an elector or juror, or to hold an office of honor, trust, or profit. When any such person is granted probation, parole, or a conditional pardon, he is competent to be an elector during the period of probation or parole or until the conditions of his pardon have been performed or have transpired, and thereafter following his final discharge. The full pardon of a convict restores the rights and privileges so forfeited under this section, but a pardon shall not release a convict from the costs of his conviction in this state, unless so specified."

This review of legislative history for the enactments involved here une-

quivocally demonstrates that they continuously and consistently have been part of the criminal laws of Ohio. When these statutes have been codified officially or unofficially, they have always been part of the criminal code. See, e.g., 1 Swan & Critchfield, Revised Statutes of Ohio (1860), "Crimes and Misdemeanors," pages 417 and 418 (Sections 41 & 45); G.C. 13458-1 and 13458-2; R.C. 2961.01 and 2961.02 (1953); and R.C. 2961.01 (1974). They have never been adopted or referred to in the election laws or any other statute controlling the qualifications of electors or officeholders.

Indeed, there have been some other statutory provisions for disqualification from public office for persons convicted of specific offenses. See, e.g., An Act "To preserve the purity of elections," Section 25, 39 Ohio Laws 13, at 19 (March 20, 1841) (disfranchisement and disqualification for persons convicted of election fraud or election bribery). We still have statutory disqualification from public office for candidates convicted of election bribery (R.C. 3599.01), for public officials convicted of bribery (R.C. 2921.02[F]), and for public officials convicted of theft in office (R.C. 2921.41[C]). Although these additional disqualification statutes also serve as sanctions for criminal conduct, rather than qualifications for election to office, they have no direct application here. Ohio has never had a specific statutory disqualification from public office for the offense for which respondent was convicted in federal court. Therefore, the only possible basis for disqualification is the general statutory disqualification whose history has already been reviewed.

Since R.C. 2961.01 and its historical antecedents have all been intended as punishments for criminal conduct, Ohio and federal constitutional provisions prohibit their application to conduct prior to their enactment. That subject has been adequately discussed in the majority opinion, so no further comment is needed here.

However, it may be purposeful to add that required rules of statutory construction prevent a retroactive application of the 1974 version of R.C. 2961.01, even if there were no state or federal constitutional limitation. The primary rules for statutory interpretation are dictated by the legislature. R.C. 1.48 directs: "A statute is presumed to be prospective in its operation unless expressly made retrospective." Further, R.C. 1.58 provides in part:

"(A) The reenactment, amendment, or repeal of a statute does not * * *:
"(1) Affect the prior operation of the statute or any prior action taken thereunder;
"(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;
"(3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal."

Nothing in the 1974 amendment of R.C. 2961.01 suggests that the legislature intended it to have retroactive effect on prior convictions, and no legislative history has been found to support such a conclusion. Therefore, as a matter of statutory construction, the 1974 amendment is not intended to apply to prior events. Cf. State, ex rel. Sweeney, v. Donahue (1967), 12 Ohio St. 2d 84 [41 O.O.2d 367]; Batchelor v. Newness (1945), 145 Ohio St. 115 [30 O.O. 314]; Wells v. Sacks (1962), 115 Ohio App. 219 [20 O.O.2d 304]. A different rule might apply to statutes affecting only remedial or procedural matters, but R.C. 2961.01 clearly imposes a substantive penalty.

Consequently, we must determine whether the 1953 formulation of R.C. 2961.01 and 2961.02 disqualify respondent from holding public office. Those were the statutory sections in effect at the time of respondent's conduct and his conviction. An examination of those 1953 provisions establishes clear disqualifica-

tion from public office for "[a] person convicted of a felony in this state" (R.C. 2961.01) or "[a] person who has been imprisoned in the penitentiary of any other state of the United States, under sentence for the commission of a crime punishable under the laws of this state by imprisonment in the penitentiary" (R.C. 2961.02). Certainly, the offense for which respondent was convicted is not "a crime punishable under the laws of this state by imprisonment in the penitentiary." Refusal to submit to induction in the federal armed services is a federal offense, but it has never been an offense cognizable under Ohio criminal laws. Therefore, any disqualification must derive from the former provisions of R.C. 2961.01 for "[a] person convicted of a felony in this state."

It may be argued that conviction by a federal court which is geographically located within Ohio constitutes a conviction "in this state," even though it was not a conviction under Ohio laws. On the other hand, conviction "of a felony in this state" may well be limited to a conviction in an Ohio state court for a crime defined by the Ohio legislature. Previous executive and judicial opinions have consistently construed the disqualification resulting from conviction "in this state" under former R.C. 2961.01 and its similar antecedents as applying solely to convictions by an Ohio state court for offenses defined by the Ohio legislature, 1927 Ohio Atty. Gen. Opinions, Vol. 1, No. 242; 1932 Ohio Atty. Gen. Opinions, Vol. 2, No. 4650; 1950 Ohio Atty. Gen. Opinions, No. 1499; *In re Sugar Creek Local School District* (1962), 90 Ohio Law Abs. 257.

Apparently, the Ohio General Assembly also construed former R.C. 2961.01 as describing convictions in Ohio state courts for offenses defined by the Ohio legislature, since the most recent amendment added disqualification from office for conviction of a felony "under the laws of * * * the United States" (134 Ohio Laws, Part II, 1866, 2004). If the former law already so provided, there would have been no reason for that amendment.

Further, that statutory interpretation is mandated by the rules of construction adopted by the legislature itself. R.C. 2901.04(A) directs:

"Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

Judicial authority has consistently been to the same effect. See, *e.g., State* v. *Wilson* (1978), 57 Ohio App. 2d 11 [11 O.O.3d 8]; *State* v. *Baker* (1976), 50 Ohio App. 2d 68 [4 O.O.3d 46]. In *Washington Court House* v. *McStowe* (1976), 45 Ohio St. 2d 228, at page 229 [74 O.O.2d 333], the Supreme Court said:

"* * * A penal statute or ordinance, pursuant to which one is charged, must be interpreted and applied strictly against the accuser, and liberally in favor of the accused. * * *" See, also, *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366]; *State* v. *Conley* (1947), 147 Ohio St. 351 [34 O.O. 279]; *State* v. *Meyers* (1897), 56 Ohio St. 340. Cf. *Clymer* v. *Zane* (1934), 128 Ohio St. 359; *State, ex rel. Moore Oil Co.,* v. *Dauben* (1919), 99 Ohio St. 406.

Since any ambiguity in this statute must be resolved in favor of the offender, the sanction of disqualification from public office in former R.C. 2961.01 must be limited to persons convicted of a felony by an Ohio state court for an offense defined by the Ohio legislature. Respondent was not convicted of such an offense by such a court. Therefore, there is no basis for disqualification from office, and the motion to dismiss this action must be granted.